Morrow v. Weed.

## Morrow *v.* Weed.[1]

As to courts superior and of general jurisdiction, every presumption is in favor, not only of their proceedings, but of their jurisdiction.

This presumption does not prevail, however, in relation to the jurisdiction of a court inferior and of limited jurisdiction, but such jurisdiction must be shown.

When the *jurisdiction* of an inferior court is shown, then the same presumption prevails in favor of its proceedings, that does in favor of those of a superior court.

Whatever intendment may be made in favor of the decision of an inferior court, there can be none in aid of its right to decide.

When inferior courts have not transcended their powers, and their jurisdiction has actually attached, such jurisdiction will not be lost by an irregularity in the mode of exercising it; and every intendment will be made in aid of the validity of the proceedings under it, which will be regarded as equally conclusive with those of courts of superior and general jurisdiction.

A superior court is presumed to act rightly, and within its jurisdiction.

An inferior court should set out the requisite facts on the face of its proceedings: and when the jurisdictional facts are thus stated, such statement is taken as *prima facie* evidence, or they are presumed to be as stated.

When a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court.

Jurisdiction is conferred: 1. By the law; 2. By a petition, or whatever stands in its place; 3. By notice, when such is required.

If there be a petition, or the proper matter of that nature, to call into action the power or jurisdiction of the court, its sufficiency cannot be called in question in a collateral proceeding.

If there be a notice or publication, or whatever of this nature the law requires,

[1] This cause was argued and determined at the June term, 1856, at which term, a rehearing was granted, and the cause continued until the December term, 1856, when the opinion on the rehearing, and affirming the former decision, was delivered.

in reference to persons or other matters, its sufficiency cannot be questioned collaterally.

Where in an action of right, the defendant claimed title to the land in controversy, under an administrator's sale, made under the statute of wills, approved February 13th, 1843, and it appeared from the proceedings of the Probate Court, that on the 30th of July, 1846, the administrator filed his petition in said court, praying for a license to sell the said real estate, which petition alleged, that the indebtedness of the estate amounted to about $1,500, and the charges of administration to between $150 and $200, and that the personal estate was insufficient to discharge that amount—upon the hearing of which petition, the said court held the sale to be necessary, and made an order accordingly; and where it was objected in the action of right, that the petition was insufficient, for the reason that it did not state the value of the personal property, and that no specific account of the debts due by the defendant, was filed with the petition; *Held*, 1. That the petition was sufficient, under the third section of chapter ten of the act of 1843; and that it was within the jurisdiction of the Probate Court, to decide upon the sufficiency of the petition; 2. That the statute did not require a specific account of the debts due from the deceased to be set out.

Where in an action of right, the defendant, to prove title in himself, offered in evidence the record of the proceedings in the Probate Court, on an application of an administrator, for a license to sell the real estate in controversy, for the payment of the debts of the intestate, under the statute of wills, approved February 13th, 1843, from which it appeared that the said court, ordered the sale of said real estate, after giving public notice thereof, for three successive weeks, in a specified newspaper; and where it was agreed between the said parties, that the said notice of said sale was published in the newspaper specified by the Probate Court, on the 31st of July, and the 7th and 14th of August, 1846, and that the sale took place on the 15th of August, 1846; and where in said action of right, it was objected that the publication of the notice of sale was insufficient, for the reason that it was not published three full weeks; *Held*, 1. That the publication was sufficient: 2. That the sufficiency of the notice of sale, was a question for the adjudication of the Probate Court, and that if its decision was erroneous, an appeal was the proper method for correcting the error.

*Appeal from the Muscatine District Court.*

THE plaintiff, the daughter and heir at law, of James G. Morrow, deceased, brings her action to recover lot 10, in block 55, in Muscatine, Iowa. The title to the lot was in the deceased, and is in the plaintiff, unless it was divested by a sale thereof, by J. L. Parmer, as administrator on the estate of J. G. Morrow. Brooks bought at the sale, and con-

veyed to Weed. The only questions made, are upon the proceedings of the Probate Court, granting the license, and upon those of the administrator.

On the 30th July, 1846, the administrator filed his petition in the Probate Court, praying for leave to sell certain real estate, of which the lot in question was part, and representing that the indebtedness of the estate, amounted to about $1,500, and charges of administration to between $150 and $200, and that the personal estate was insufficient to discharge that amount. The court ordered notice "of the pendency of the petition, to all interested, by advertising for three successive weeks in the Bloomington Herald." An affidavit of such publication was filed. The records of the Probate Court of the 25th of July, recite that, "the court being satisfied, that all interested have been duly notified of the hearing of said petition, and of the necessity of said sale," thereupon orders the administrator to sell, "first giving public notice thereof, by publishing the same for three successive weeks, in the Bloomington Herald, and taking the oath required by law." No bond is required. The administrator took the oath prescribed by the statute, and made sale. On the 10th of October, 1846, he made a report, setting forth the specific property sold, to whom, and for what sums. His report says, that, "legal notice of said sale, was published in the Bloomington Herald, an affidavit of which fact, you have filed in your office." Upon this, the court passed an order which recites, that the "foregoing report of the sale, &c., has been duly examined and approved." And the administrator is ordered to execute deeds to the purchasers. The *notice of sale*, is not found among the papers and records of the court; but it is agreed, that it was published in the said paper, on the 31st of July, and the 7th and 14th of August, and that the sale took place on the 15th of August. A verdict was rendered for the plaintiff, by agreement, subject to the opinion of the court on the law, as applicable to the above facts; and subsequently a judgment was rendered in favor of the plaintiff, from which the defendant appeals.

*Richman & Brother*, for the appellant.

1. Where *notice* was not served on minor *heirs*, and the sale purported to have been made by *one* of two administrators, the sale was held not *void*. *Doe* v. *Harvey*, 5 Blackf. 487 ; *Robb* v. *Lessee of Irwin*, 15 Ohio, 6°9 ; *Lessee of Snevely* v. *Lowe*, 18 Ohio, 368. Where land was sold at private sale, contrary to the statute, the sale was held erroneous, but not void, and the purchase under it was valid. *Thompson* v. *Doe*, 8 Blackf. 336. An administrator's sale may be voidable as to first purchaser, yet valid as to second purchaser. Appellant is a second purchaser. *Piatt* v. *Heirs of St. Clair et al.*, 6–7 Ohio, 490. As to presumptions in favor of administrator's sales, see *Heirs of Ludlow* v. *Johnson*, 1-4 Ohio, 685 ; *Lessee of Goforth* v. *Longworth*, 1-4 Ohio, 750 ; *Lessee of Ewing* v. *Higby*, 6-7 Ohio, 342. The proceedings cannot be impeached collaterally. *Lessee of Adams* v. *Jeffries*, 12 Ohio, 271. And the rule is the same in attachment cases. *Lessee of Paine* v. *Mooreland*, 15 Ohio, 435.

2. That the judgment of a court having general jurisdiction, cannot be collaterally impeached, see. *Newham's Lessee* v. *City of Cincinnati*, 18 Ohio, 323 ; and that a probate court is one of general jurisdiction, see *Doe* v. *Smith*, 1 Carter, 456 ; *Doe* v. *Haumal*, 3 Harrison, 79 ; *Grignon's Lessee* v. *Astor*, 2 Howard, 319 ; *Propst* v. *Meadows*, 13 Illinois, 169.

*George S. Hebb*, for the appellee.

The first question presented for examination is, can the judgments of courts of superior or of limited and inferior jurisdiction, be impeached in a collateral proceeding ; and if the judgments of either of such courts can be thus questioned, to what extent can they be thus attacked ? While the proceedings of courts of superior jurisdiction must be presumed to be correct, the acts of courts of limited and inferior jurisdiction cannot be so presumed ; but it must appear affirmatively, that all the acts requisite to confer jurisdiction were performed ; and that when such acts do not so appear upon the face of the proceedings, and are not proved *aliunde*, the whole proceedings, when examined collaterally, will be set

aside and declared null and void.   To sustain this point, we cite the following authorities : *Ford* v. *Babcock*, 1 Denio, 158 ; *Bloom* v. *Burdick*, 1 Hill, 130 ; *Dakin* v. *Hudson*, 6 Cowen, 221 ; *Sherman* v. *Ballou*, 8 Cowen, 304 ; *Bigelow* v. *Stearns*, 19 Johnson, 39 ; *Borden* v. *Fitch*, 15 Johnson, 121 ; *In the matter of Underwood*, 3 Cowen, 59 ; *Jenning* v. *Corwin*, 11 Wendell, 647 ; *Smith* v. *Rice*, 11 Mass. 507 ; *Proctor* v. *Newhall*, 17 Mass. 91 ; *Thatcher* v. *Powell*, 6 Wheaton, 119 ; *Jockson* v. *Esty*, 7 Wheaton, 148 ; *Rea* v. *McEachron*, 13 Wheaton, 465 ; *Atkins* v. *Kinnan*, 20 Wend. 241 ; *Parker* v. *Rule's Lessee*, 9 Cranch, 64 ; *Williams et al.* v. *Peyton's Lessee*, 4 Wheat. 77 ; *Stephens* v. *Ely*, 6 Hill, 607 ; *Connell et al.* v. *Barnes*, 7 Hill, 35, and note *e ; The People* v. *Koeber*, 7 Hill, 40 ; *Sharp* v. *Spier*, 4 Hill, 76 ; *Corwin* v. *Merritt*, 3 Barbour, 341 ; *Reed* v. *Wright*, 2 Greene, 15.   Indeed the courts in America, have gone so far as to give color to the assertion, that the acts of courts of superior, as well as of limited and inferior jurisdiction, may be attacked and declared null and void in collateral proceedings.   *Williamson* v. *Berry*, 8 Howard, 497 ; 6 Howard's (Miss.) 106 ; 1 Smedes & Marshall, 351 ; 7 Ib. 85 ; 2 B. Monroe, 453 ; 4 Peters, 466 ; 1 Peters, 340 ; 13 Peters, 498 ; *Skinner's Lessee* v. *Lynn et al.*, 2 Howard, 43 ; 8 Howard, 566.   We only claim as the extent of these decisions : 1. That the acts of courts of superior jurisdiction are void, when manifestly beyond their jurisdiction ; and 2. That the acts of courts of inferior and limited jurisdiction, are not valid, unless *prima facie* within their jurisdiction.

The statute under which these proceedings were had, is chapter 162 of Revised Statutes, approved February 13th, 1843.   Sections one, two and three of sub-chapter 10, of chapter 162, provide as follows : " When the goods and chattels of any deceased person, in the hands of his administrator, shall be insufficient to pay all his debts, with the charges of administration, his administrator may sell his real estate for the purpose, upon obtaining a license therefor, and proceeding therein in the manner hereinafter provided." " Such license may be granted by the District Court, or by the Court of Probate, in the county in which

the letters of administration were granted." "In order to obtain such license, the administrator shall present to the court a petition, setting forth the amount of the debts due from the deceased, as nearly as they can be ascertained, and the amount of the charges of administration, and the value of the personal estate; and if it shall be necessary to sell only a part of the real estate, he may also set forth the value, description and condition of the estate, or of such part thereof as he shall propose to sell; and the court may, in all cases where it is not necessary to sell the whole, decide and direct what part of the estate shall be sold."

Section 9 of the same sub-chapter 10, provides: "If the facts set forth in the petition shall be proved to the satisfaction of the court, and if no sufficient cause be shown to the contrary, the court shall grant the license." And section 36 provides, that if any one shall contest the validity of the sale, (authorized under the chapter,) it shall not be avoided on account of any irregularity in the proceedings, provided it shall appear: 1. That the administrator was licensed to make the sale by a court of competent jurisdiction. 2. That he gave bond, which was approved by the judge of probate, (in case any bond was required.) 3. That he took the oath prescribed in this chapter. 4. That he gave notice of the time and place of sale, as prescribed herein. And 5. That the premises were sold accordingly, by public auction, and are held by one who purchased them in good faith.

It was absolutely necessary that the administrator should present to the court a petition, setting forth the amount of the debts of the deceased, the charges of administration, and the value of the personal estate, in order to confer jurisdiction. It is true that the petition in this case, states the aggregate indebtedness, and the costs of administration; but it is wholly silent as to the value of personal estate, and simply alleges that the personal estate is insufficient to pay the debts of the deceased. The administrator should have filed, as part of his petition, an account specifically stating the indebtedness of the deceased, the costs of administration,

as also the value, description and condition of the real estate, agreeably to the requirements of the statute, in order that the court should determine whether an order of sale should be passed, and whether the whole, or only a part, (and if only a part, then what part,) of the real estate should be sold. It is not for the administrator simply to allege the insufficiency of the personal estate, but under the statute, the court must determine whether the personal estate is insufficient to pay the debts of the deceased. How, then, can the court decide such question, unless the facts showing the insufficiency were presented to the court? The statute prescribes that such facts shall be presented by petition; and unless it appears that such facts were so shown to the court, the court was not a court of competent jurisdiction, and all the subsequent proceedings were *coram non judice*, and void. Upon this point the following cases cited, *supra*, are very clear and positive: *Ford* v. *Walsworth*, 15 Wendell, 449; *Bloom* v. *Burdick*, 1 Hill, 130; *Corwin* v. *Merritt*, 3 Barbour, 340; *Atkins* v. *Kinnan*, 20 Wendell, 241; *Ford* v. *Walsworth*, 19 Wendell, 334.

Again: section 13 of the same sub-chapter, provides, "that the court which licenses the sale, may order the public notice of the time and place of sale to be published three weeks successively in any newspaper," (instead of the first notice, in the first part of the section.) The court ordered that notice should be published for three weeks successively before the day of sale, in the "Bloomington Herald." It nowhere appears, in the proceedings before the Probate Court, that the administrator gave the notice as prescribed by the statute, and directed by the court. It was admitted below, that notice was published three times in the "Bloomington Herald;" that the first publication was on the 31st of July, the second on August 7th, and the third on August 14th, and the sale on August 15th. It is therefore manifest, that the administrator did not give the notice of the time and place of sale, as prescribed by the statute, and directed by the court. The cases cited, *supra*, fully sustain the doctrine, that where a statute prescribed that an act

shall be done in a specific mode, that mode must be strictly complied with; and upon failure of compliance with the requirements of the statute, the court assuming jurisdiction acquired no jurisdiction, and its subsequent proceedings are a nullity. *Vide*, particularly, *In the Matter of Underwood*, 3 Cowen, 59; *Kennedy* v. *Grier*, 13 Illinois, 432; *Corwin* v. *Merritt*, 3 Barbour, 341. The statute enacts, that no sale shall be avoided on account of irregularity in the proceedings, provided five certain facts appear. Now, we take it, that all those facts must appear affirmatively to have been done; and upon failure to establish any one of the five required facts, the sale is irregular and invalid.

We have already shown, that the first requisite, jurisdiction, was never obtained by the Probate Court. This is, of course, conclusive as regards the other requisites; for if the court had no jurisdiction, a compliance, however strict, with the other requirements of the statute, could not cure the defect. But assuming, for the sake of the argument, that the court had jurisdiction, we have shown that the administrator did not give public notice of the time and place of sale, as prescribed by the statute, and directed by the court—which defect is fatal to those claiming under the administrator's sale. The five requirements of the statute, are the links of a chain, connecting the deed or title of the intestate with the deed of the purchaser. The removal or absence of a single link, breaks the chain of title, and the sale is irregular, and the purchaser takes no title.

The question is often asked, whether a court is to be deemed a court of superior or of inferior and limited jurisdiction? In this case, there can be no question. The Probate Court was one of inferior and limited jurisdiction; for it was the mere creature of the statute, deriving all its powers and duties—all its energies and life—from the statute. "The courts which, under the names of orphans' courts, courts of probate, and other appellations, are intrusted with the settlement of the personal estate of decedents, and in subordination to this, with the power to sell real estate, when the personal is insufficient to meet the charges upon

Morrow v. Weed.

it, are treated in some of the states, as inferior tribunals, and their decrees held to be voidable collaterally, by showing a want of jurisdiction, either in the cause itself, or over the parties. *Vide* 1 Smith's Leading Cases, (5th American edition,) 846, and the twenty-six cases there cited as sustaining the doctrine.

To recapitulate, we contend: 1. That while the jurisdiction of superior courts will be presumed, the judgments of such courts are void, in the absence of jurisdiction. 2. That the judgments of inferior and limited courts are nullities, unless such courts show affirmatively, that they had jurisdiction. 3. That the Probate Court in this cause, being the creature of the statute, is a court of special, inferior, and limited jurisdiction; that its proceedings, unless strictly conformable to the requirements of the statute, are invalid, and must be set aside in this collateral proceeding. 4. That the Probate Court was not a court of competent jurisdiction, inasmuch as the petition praying for license to sell the real estate of the intestate, did not comply with, or contain the specific requirements of the statute, so as to confer jurisdiction. 5. That assuming that the court had jurisdiction, the administrator did not give public notice of the time and place of sale, as prescribed by the statute, and directed by the court. 6. That the proceedings before the Probate Court were irregular and invalid, and that the sale made by the administrator, under the order of sale, passed no title to the vendee.

*Henry O'Conor*, on the same side.

The appellee submits the following propositions: 1. That the sale of the property by Palmer, as administrator, is void, for the reason that he has not complied with the requirements of the statute regulating sales of real estate by administrators. 2. That the purchaser at the administrator's sale, took no title, and could not pass any title to subsequent purchasers. 3. That the statute confers the only power the administrator has, to sell and convey the real estate of the decedent, and that unless the substantial requisites of the

statute are complied with, the heir cannot be, and is not, divested of title.   In support of these propositions, the court is referred to the following authorities : Revised Statutes of 1843, 705, 706, §§ 3, 4, 6, 8, 13, 14, 33, 36, 38, and chapter 10 of the Revised Statutes generally ; *Bloom* v. *Burdick*, 1 Hill, 130 ; *Corwin et al.* v. *Merritt*, 3 Barbour, 341 ; *Reynolds* v. *Wilson*, 15 Illinois, 394 ; *Goforth* v. *Longworth*, 1-4 Hammond, (Ohio condensed,) 750 ; *Ford* v. *Walsworth*, 19 Wendell, 334 ; 1 Smith's Leading Cases, 828, and especially 832, and the authorities there cited ; *Mayhew* v. *Davis*, 4 McLean, 213.   These authorities are directly in point ; and although authorities sustaining the principle for which we contend, might be multiplied almost indefinitely, we chose to cite those decisions which bear directly on cases of this character.

No rule of law, we think, is better settled, or more clearly established, than this, viz : that inferior courts, with limited or special jurisdiction, must, in the record of their proceedings, show *affirmatively*, that the law which confers the jurisdiction, has been substantially complied with ; and that, if the record fail to show jurisdiction, the whole proceedings are void.   *Bowman* v. *Ross*, 6 Cowen, 234; *Broadhead* v. *McConnell*, 3 Barbour, 175 ; *Holmes* v. *Mason*, 12 Illinois, 424 ; *Kilbourn* v. *Woodworth*, 5 Johnson, 37 ; *Hollingsworth* v. *Barbour*, 4 Peters, 467 ; *Moore* v. *Stark*, 1 Ohio (N. S.) 369 ; *Horner* v. *State Bank*, 1 Carter, 131 ; *Kinney* v. *Greer*, 13 Illinois, 432; *Jackson* v. *Shepperd*, 7 Cowen, 88 ; *Smith* v. *Rice*, 11 Mass. 506, 507 ; *Elliott* v. *Piersoll*, 1 Peters, 328. See, also, 2 Peters, 157 ; 3 Peters, 193 ; 6 Peters, 691.

Those authorities sustain the proposition we contend for, in its length and breadth, and would be, we think, in themselves, amply sufficient for the purposes of this case.   But the principle is extended much further ; and in a vast number of decisions, where the question is considered more especially with reference to the subject matter, we find this wholesome and sound doctrine, viz : that in the proceedings of a court of superior and general jurisdiction, while all presumptions are in favor of the validity of its proceedings,

Morrow v. Weed.

and the final record conclusive, not only of what it express-es, but also of all fair and legal implications, yet those courts, when invested by statute with *particular* and *special* pow-ers, are, with regard to the exercise of those special powers, placed on precisely the same footing with inferior courts, or courts of limited jurisdiction; and especially is this true where superior courts are invested with *probate* and *surro-gate* powers. In such cases, the record of a superior, as well as that of an inferior court, must show that the require-ments of the statute have been substantially complied with, and that unless the record shows this, the proceedings are sim-ply void, and may be disregarded or set aside in any proceed-ing, either collateral or direct, where their validity is called in question. Without enumerating the particular authorities sustaining this position, we refer the court to 1 Smith's Lead-ing Cases, 835, and the authorities there cited.

Now we ask the court to examine the transcript from the Probate Court, which is the only evidence in this case, and then examine page 713 of the Revised Statutes of 1843, under the provisions of which this sale was made, and see if, by any view that can be taken of the matter, the *infant* heir in this case should be divested of the title to her inher-itance.

WOODWARD, J.—The subject matter of this cause, namely, the law relating to the collateral impeachment of the pro-ceedings of courts, has received quite a free investigation by this court, in the case of *Cooper* v. *Sunderland*, 3 Iowa, 114. Many questions arise—the cases are exceedingly numer-ous—and great confusion, and but little rule, prevails among them. In the case of *Cooper* v. *Sunderland*, we endeavored to ascertain some rules which should serve as guides in the decision of all similar cases; and to that, we refer for the principal part of our discussion of the subject.

In regard to courts superior, and of general jurisdiction, every presumption is made in favor, not only of their pro-ceedings, but of their jurisdiction. 1 Smith's Lead. Ca. (5th ed.,) note, 820, 848, where the subject is considered,

and the authorities cited. This presumption is not exercised, however, in relation to the jurisdiction of a court inferior and limited, but this must be shown. Note, *supra*, 816, with the authorities there cited. But when the *jurisdiction* of an inferior court is shown, then the same presumption prevails in favor of its *proceedings*, that does in favor of those of a superior court. Note, *supra*, 817, 848 ; *Reeves* v. *Townsend*, 2 Zabris. 396 ; *Wilson* v. *Wilson*, 18 Ala. 176 ; *Clark* v. *Blacker*, 1 Cart. 215 ; *Paul* v. *Hussey*, 35 Maine, 97 ; *Wright* v. *Warner*, 1 Doug. 384 ; *Fox* v. *Hoyt*, 12 Conn. 491 ; *Raymond* v. *Bell*, 18 Conn. 81 ; *Sheldon* v. *Newton*, 3 Ohio, (N. S.) 495. " Whatever intendment may be made in favor of the decision, there can be none in aid of the right to decide." *Perrine* v. *Farr*, 2 Zabris. 356 ; *Bridge* v. *Bracken*, 3 Chand. 75 ; *Supero Crawford Co.* v. *Le Clerc*, 4 Chand. 56 ; *Dempster* v. *Purnell* 3 M. & G. 375 ; *Rowland* v. *Veal*, 7 Cowp. 19. When inferior courts have not transcended their powers, " and their jurisdiction has actually attached, it will not be lost by an irregularity in the mode of exercising it, and every intendment will be made in aid of the validity of the proceedings under it, which will be regarded as equally conclusive with those of courts of superior and general jurisdiction." Note, *supra*, 847 ; citing *Grignon's Lessee* v. *Astor*, 2 How. 319 ; *McPherson* v. *Cimliff*, 11 S. & R. 422 ; *Reeves* v. *Townsend*, 2 Zabris. 396 ; *Clark* v. *Holmes*, 1 Doug. 390, and many other cases. It is admitted that the jurisdictional facts must appear, but much of the obscurity among the cases, arises from their looking into matters which are not of this character ; and a little reflection will show us, that if we undertake to look into the *details* of the proceedings of a court, there will be no end to the cases, and no rule to guide them.

The next inquiry is : how shall the necessary facts conferring jurisdiction " be shown," or " appear ?" A good deal of ambiguity seems to have arisen from the answer to this question, as made in practice. A superior court is presumed to act rightly and within its jurisdiction, but an inferior court should set out the requisite facts, on the face of its

proceedings. See note, *supra*, 818, and many authorities. When the jurisdictional facts are stated on the face of the proceedings of an inferior court, this is taken as *prima facie* evidence, or they are presumed to be as stated. Note, *supra*, 816, 817–82, with numerous cases, for which we refer to *Cooper* v. *Sunderland.* The case does not require us to consider what is a superior and what an inferior court. But see the above note, heretofore cited, 824–846. "When a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court." *Elliott* v. *Piersoll,* 1 Pet. 328, 341; *Thompson* v. *Tolmie,* 2 Ib. 157; *Voorhes* v. *Bank of U. S.,* 10 Ib. 473; *Grignon's Lessee* v. *Astor,* 2 How. 319; *Wright* v. *Marsh et al.,* 2 G. Greene, 111, and other cases. The question, then, is, when does jurisdiction arise, *or what gives jurisdiction?* The answer is: first, the law; second, a petition, (or whatever stands in its place;) third, notice, (when such is required.) But the essentiallity of notice, in proceedings so far *in rem* as administrators' and guardians' sales, is left doubtful.

But laying aside minor questions, we come to the points which will enable us to decide the case before us upon *rule,* and not merely upon detached cases. We think the cases will support the following two rules: If there be a petition, or the proper matter of that nature, to call into action the power or jurisdiction of the court, the sufficiency of it cannot be called in question collaterally. This is for the appellate power only. If there be a notice or publication, or whatever of this nature the law requires in reference to persons or other matters, its sufficiency cannot be questioned collaterally. Of course, this means a notice coming within the legal idea and range of such a matter. An absurdity could not be permitted to pass. Smith's Cases, *supra,* 837, 843; *Wight* v. *Sheldon,* 1 Seld. 497; *Borden* v. *The State,* 6 Eng. 519; *Ewing* v. *Higby,* 6-7 Ohio, 343; *Paine* v. *Mooreland,* 15 Ohio, 435; *Wright* v. *Marsh et al.,* 2 G. Greene, 109, 112.

The case at bar arises under the same act with the case of *Cooper* v. *Sunderland,* namely, that of 13th February, 1843. Rev. Stat. of 1843, chap. 162, sub-chapter 10, 706. The·objections made to the sale in this case, are : *First.* That the administrator's petition does not show the value of the personal estate. *Second.* That no specific account of debts is set forth. *Third.* That the notice of the sale was not published for a period of three weeks, although it·was published on three several and successive weeks. The above sub-chapter 10, (§ 36,) provides as follows :

In case of an action relating to any estate sold by an administrator, in which an heir, or other person claiming under the deceased, shall contest the validity of the sale, it shall not be avoided on account of any irregularity in the proceedings, provided it shall appear :

*First.* That the administrator was licensed to make the sale by a court of competent jurisdiction.

*Second.* That he gave bond, in case any was required by the court.

*Third.* That he took the oath prescribed in that chapter.

*Fourth.* That he gave notice of the time and place of sale, as prescribed therein.

*Fifth.* That the premises were sold accordingly at public auction, and are held by one who purchased them in good faith.

The objections made are to be tried by these tests, and the somewhat ample examination made in the other case, served mainly to determine what constituted or gave jurisdiction, and how matters might legally " appear," in the sense of the statute.

*First,* Then, the court was one of competent jurisdiction. The law and the petition gave jurisdiction of the subject matter, and the notice, of the person. The objection that the petition was·not a sufficient one, comes under one of the rules before stated. It was for the court to decide. It is matter of appeal or error, but cannot be brought up in this manner. This must be so; for if such questions can be raised in a collateral action, questions would be intermina-

ble—a collateral action would become another mode of trying errors. Every justice of the peace could try the decisions of every other, and the highest tribunal, and no one could know when he had a conclusive judgment.

*Second.* No bond was required by the court.

*Third.* The administrator took the oath prescribed by the act.

*Fourth.* As to the notice of the time and place of sale. The act (chap. 10, § 11) authorizes the court to order notice to be published "three weeks successively." The court ordered it "for three successive weeks." The publication was on July 31st, and August 7th and 14th, and the sale on the 15th of August. The terms of the act admit of the question, whether three full weeks were required, or only a publication on some day in each of three weeks, so as to give at least two full weeks' notice. This would not be unreasonable, for that is a longer time than is required to put a party to answer to a suit, however great the magnitude of the matter involved. According to the rule before stated, this, also, was a question for the adjudication of the court; and if its decision was erroneous, an appeal was the method for correcting it, and the error cannot be tried in this collateral action. If this were admissible, then every question relating to the sufficiency of a notice, and of its service, too, in any of the courts, could be brought up and reviewed in the same manner.

*Fifth.* No question is made relative to the *bona fides* of the sale and the purchase.

The objection to the sale must be overruled, and the sale held good. Therefore the judgment of the District Court is reversed, and a *procedendo* ordered.

Upon the delivery of the foregoing opinion, the appellee filed a petition for a rehearing, which having been granted, the cause was continued. At the December term, 1856, the cause was re-argued, by *David C. Cloud*, for the appellant, and *Richman & Brother*, for the appellee.

*David C. Cloud*, for the appellee.

*First.* As to powers of courts created by statute. I start out with this proposition: A court acting under a naked power, derived from the statute, must comply with the requirements of the statute in every particular; nothing can be omitted, and no presumptions can be made in favor of its action in any particular. Not only must it observe and perform what the statute says it must observe and perform, but all its acts must be as the statute prescribes, and no other mode will do. Nothing can be omitted, else the acts of such a court will be void. When the statute says that a certain act must be performed in a certain manner, it must be performed in that manner, and no other will render the acts of a court of this character valid, in law or equity. In Blackwell on Tax Titles, on page 51, the author, in treating upon this class of powers, says: There is still another class of powers, more closely resembling the powers in question, and depending upon the statute for the mode and manner of their execution, and may therefore be properly termed statutory powers; such as the sales of land by administrators to pay the debts of an intestate, by guardians for the maintenance and education of their wards, proceedings for the condemnation of land for public use, and others of a like nature. "In all these cases, the power is special, and the proceedings are summary." If this special authority is conferred upon a superior court of general jurisdiction, which usually proceeds according to the course of the common law, the tribunal is regarded *quo ad hoc*, as an inferior court with special jurisdiction. The rule applicable to such a power, is thus laid down by Justice CATON, in reviewing a guardian's sale, (*Young* v. *Lorrain*, 11 Ill. 636, 637): "This is a proceeding not according to the course of common law, but a special jurisdiction conferred by the statute, and although in a court of general common law and chancery jurisdiction, yet when a court undertakes to exercise this extraordinary jurisdiction, which is not in conformity with either, it must appear upon the face of the record or proceeding itself, that the contingency existed, or at least was alleged, which au-

thorized it to proceed under the statute, and make the order."
The language of Chief Justice MARSHALL is similar; see
*Thatcher* v. *Powell*, 6 Wheat. 119.   He says: In summary
proceedings, where a court exercises an extraordinary power,
under a special statute prescribing its course, we think that
course ought to be exactly observed, and those facts espe-
cially which gave jurisdiction, ought to appear, in order to
show that the proceedings are *coram judice*.   In other words,
all of the facts which are essential to the exercise of the
power, must affirmatively appear upon the face of the
record—they cannot be supplied by proof or made out by
intendment.   The authorities upon this point are uniform.

" If, on the other hand, this special authority is conferred
upon an inferior tribunal of limited jurisdiction, &c., the
rule is still more strict.   It is thus laid down.   Where a
special authority is delegated by statute to particular per-
sons, or to any inferior tribunal, affecting the property of
individuals against their will, the course prescribed by law
must be strictly pursued, and appear to be so upon the face
of the proceedings, or the power is not well executed;
and it makes no difference in the application of this principle,
whether the question comes before the superior courts by
certiorari or collaterally.   If the law has not been strictly
complied with, the proceeding is a nullity, and the adjudi-
cation gives it no additional validity."   See *Smith* v. *Hile-
man*, 1 Scam. 323; *Sharp* v. *Spier*, 4 Hill, 86, and the
authorities therein cited.   See also Blackwell on Tax Titles,
pages 54, 55, 56, 57 and 58.   In the case of *Smith* v. *Hileman*,
above cited, which was an action of ejectment to recover a
parcel of land, which the defendant claimed, under a sale
made by the administrator, to pay debts, in pursuance to the
order of the Circuit Court, the statute required the adminis-
trator to set forth, in his deed of conveyance, " the order of
the court at large."

The deed omitted to set forth the order at large, but recited
it substantially.   The court held that no title passed by the
deed.   SMITH, J., in delivering the opinion says:   " The
reason of this provision, we are not at liberty to inquire into,

nor ·what the supposed necessity may have been, :in the opin-
ion of the legislature, for its adoption.  It is sufficient to
perceive, that the recital of the substance of the order is not
a compliance with, nor an observance of the act.  A special
power granted by statute, affecting the rights of individuals,
and which divests the title of real estate, ought to be strictly
pursued, and should appear to be so, on the face ·of the pro-
ceeding."  The court will perceive that these were collat-
eral proceedings, and that in each case they were treated as
nullities.

In the following cited cases, the doctrine is fully recog-
nized ; indeed, a general principle is established, subject to
no exceptions, that the validity of every involuntary aliena-
tion of land, depends upon a strict compliance with all the
requirements of the law by which they are authorized—such
as the taking of private property for public use, the extend-
ing of an execution upon land in the New England states,
the sale of land by guardians, under an order of court, and
also sales made by administrators of the real estate of their
intestate, viz :  *Wellington* v. *Gale*, 13 Mass. 483 ;  *Young* **v.**
*Keough*, 11 Ill. 642 ;  *Smith* v. *Hileman*, 1 Scam. 323 ;  *At-
kins* v. *Kinnan*, 20 Wend. 241.

In support of the proposition that all proceedings. which
are had under, and by virtue of positive statuary enactments,
must be conducted in the prescribed mode, and no other,
see Blackwell on Tax Titles, pages 78, 79, 80 and 81.  Judge
HUBBARD, in 15 Vermont, page 72, says :  " I am not very
well satisfied with the summary mode of getting rid of statu-
tory provisions, by calling it directory.  If one positive re-
quirement and provision of a statute, may be avoided in
that way, I see no reason why another may not."  Mr.
Justice MORTON, in 22 Pick. 387, says :  " Equitable con-
structions, though they may be tolerated in remedial and,
perhaps, some other statutes, should always be resorted to
with great caution, and never extended to penal statutes, or
mere arbitrary regulations of matters of public policy. · The
power of extending the meaning of a statute beyond its
words, and. deciding by equity, and not by language, ap-

proaches so near the power of legislation, that a wise judiciary will exercise it with reluctance, and only in extraordinary cases. This doctrine is daily gaining ground, and it is to be hoped that the day is not far distant when our courts will adopt the maxim of the Missouri court." Thus the law is written, and we do not feel called upon to give reasons why it is so. 9 Missouri, 878. See also *Early* v. *Doe*, 16 How. 610; *Doughty* v. *Hope*, 3 Denio, 595; *Varnick* v. *Tallman*, 2 Barb. 113; *Parker* v. *Rule*, 9 Cranch, 64; *Ronkendorf* v. *Taylor*, 4 Pet. 349; *Foreman* v. *Buffum*, 4 Cush. 267; *Lessee of Perkins* v. *Dribble*, 10 Ohio, 433; *Fitch* v. *Casey*, 2 G. Greene, 300; *Mason* v. *Fearson*, 9 How. 248; *Jackson* v. *Esty*, 7 Wend. 148; *Atwood* v. *Collin*, 20 Pick. 418; *Williams* v. *Peyton*, 4 Wheat. 77; *Jackson* v. *Shephard*, 7 Cowen, 88; *Taylor* v. *Galloway*, 1 Ohio, 232.

All these authorities go to establish the position, that in all special proceedings, under a statute, the mode of procedure prescribed by the statute, must be strictly pursued, and that in this class of cases the records must show that the statute requisites have been complied with. Under our statutes, the proceedings of adminstrators and probate courts, in the settlement of estates, are special acts, depending upon the statute for all their power. All their acts must appear of record. See chap. 12, Rev. Stat. 718.

The Probate Court cannot adjudicate or decide upon the question of its own jurisdiction. It has jurisdiction, if certain facts appear. Those facts shall appear by the petition. See chap. 10, § 4, page 706. The Probate Court cannot say that the facts do appear, if the petition omits any one of the statute requisites. This statute is not directory, and cannot be evaded or omitted; all that the statute says, shall appear, must appear, and if a probate court improperly decides that it has jurisdiction, when one of the matters which the statute says shall be contained in the petition, is omitted, its decision is without authority of law, and therefore void. It cannot, by that improper decision, acquire jurisdiction, and make its own acts of such validity that they cannot be inquired into, in a collateral proceeding. The

Morrow v. Weed.

court has said in its opinion, that the fact that the Probate Court was satisfied that it had jurisdiction, was conclusive as to that fact, and that the only way to inquire into that fact, was by appeal, or writ of error. Such was the substance of the opinion of the court upon this point. With all deference to the court, permit me to say, that if the authorities I have quoted and cited above are law, then the opinion of this court is not law; for the reason that the same is in conflict with all the authorities I have found, and appears to me to be in conflict with the statute itself. The statute says, that the administrator in his petition must state, (with other things,) "the value of the personal property." This is not directory, but a positive command. For what purpose is he to make this statement ? Why, in order that the Probate Court can determine whether it is necessary to sell any part of the realty. The Probate Court cannot assume jurisdiction so far as to order a sale of the realty, unless it is shown by the petition that the personalty is insufficient to pay the debts of the estate. The fact that the personalty is insufficient, is the fact that gives jurisdiction to proceed against the realty. If this fact does not appear, how is a probate court to acquire jurisdiction? Not by an assumption of it, in violation of the statute requirements. If this is so, then there is no use of any statute, but all you have to do is to elect a probate judge, and let him in his discretion dispose of all the estates that come under his notice, and thus get rid of useless statute provisions. If the decision of the court upon this question, is correct, then the judge can disregard one provision of the law, and if one, why not another, and why not *fritter* the statute all away, and act as a court of conscience ?

The rule by which we are to determine whether a court is to be judge of its own jurisdiction, is this : All courts which are not required to place upon their records, all the facts which are essential to the exercise of a power, but whose adjudications and records are presumed to be correct, can determine their own jurisdiction. On the other hand, all courts acting under a special statute, who are required

to place all the facts, essential to the exercise of a power, upon their records, are not competent to pass upon the question of their own jurisdiction; but this question is determined by an inspection of their record, and if this record does not show a compliance with the statute require- ments in every particular, their acts are *coram non judice*, and absolutely void.

Of this latter class are the probate courts, and nothing can be presumed in their favor. Their record must show that the facts existed, which would give them jurisdiction. It must be shown, not by the conclusion at which they arrive from a hearing of the petition alone, but from the petition itself. If the petition does not contain the statute requisites, then no adjudication upon that petition—no matter how full, or how distinctly it is spread upon the records—can give juris- diction; neither is it the fact that a petition is filed, which gives jurisdiction, but the fact that the proper matter is contained in that petition. The case cited by the court in their opinion, from 15 Ohio, goes no farther. The language in that case is: " The filing the proper affidavit, &c., gives jurisdiction." Suppose that the affidavit had omitted to state one of the essential facts necessary to authorize the issue of an attachment, would the court still have had juris- diction so far as to bind the property attached ? Certainly not; for the reason, that the issue of an attachment, is an independent summary proceeding—a proceeding which can only be exercised in the mode prescribed by statute; and any attempt to omit any one of the requirements of the statute, would render all acts void; for the reason, that a court exercising this power in any other mode, would destroy its validity. No court could cure a defective affidavit, by entering upon its records that the proper affidavit had been filed, when the affidavit itself showed the defect. The con- tents of the affidavit is one of the things that must appear in order to render the attachment valid. The reason is obvious. It is a summary proceeding, and cannot be performed in any other manner; and while a judgment recovered against a person upon constructive notice, is voidable only, for the

reason that it is in the ordinary course of procedure of courts of general jurisdiction—yet an attachment irregularly issued, or issued upon an improper affidavit, in the same case, would be absolutely void, for the reasons above stated.

The case of *Grignon's Lessee* v. *Astor*, cited by the court, is of a character similar to our probate courts. Yet the county court in that case acquired jurisdiction by the filing of the petition, (which in this case contained the proper matter,) and by the certificate of the judge of probate. This case does not warrant the conclusion that because a petition was filed, no matter how irregular, the county court had jurisdiction. The test of jurisdiction in this case is, was the petition such an one that on a demurrer, judgment would have been rendered for the petitioner?

By reference to the statement made of the contents of the petition, it will be seen that it contained all the statute requisites—and it was this fact that gave jurisdiction. This petition contained the proper matter, and the certificate of the probate judge, gave the county court jurisdiction, and having thus acquired jurisdiction, its records, so far as its own acts are concerned, import *absolute verity*, and cannot be questioned collaterally. The law conferred no power upon the county court in this case to render any other judgment than that defined by statute. It could adjudicate no case except the case made by the presentation of the proper matter. Any acts of this county court, without this proper matter upon which to base its proceeding, would be void, and could pass no title to real estate. The line of distinction between the county courts of- the territory of Michigan and the Probate Court of the territory of Iowa, is this: In the former, the court was not required by the statute to record the facts giving it jurisdiction, whilst in the latter, all its acts and doings must be recorded.

In the case above cited by the court, (2 Howard, 441,) the court says: "The true line of distinction, between courts whose decisions are conclusive, if not removed to an appel- late court, and those whose proceedings are nullities, if their jurisdiction does not appear upon their face, is this: A court

Morrow v. Weed.

which is competent by its constitution, to decide on its own jurisdiction, without setting forth in these proceedings the facts and evidence on which it is rendered—whose record is absolute verity, not to be impugned by averment or proof to the contrary—is of the first description; there can be no judicial inspection behind the judgment, save by appellate powers.    A court which is so constituted that its judgments can be looked through for the facts and evidence necessary to sustain it—whose decision is not evidence of itself to show jurisdiction and its lawful exercise—is of the latter description; every requisite for either must appear on the face of their proceedings, or they are nullities."

If our probate courts are of this latter description, (and of this, I have no doubt,) then the petition filed by the administrator, not being as prescribed by statute, the Probate Court did not get jurisdiction, and all subsequent acts, under its orders, are void, and may be so declared in a collateral pro· ceeding.    The court, in its opinion, has said that a defective petition can only be reviewed upon appeal, &c.    The reasons given by the court for this mode of review, and this only, can have no weight, if my position is correct.    It does not follow that because the proceeding of probate courts and administrators, concerning the sale of real estate, can be questioned collaterally, that " questions would be interminable."

This class of cases is as distinct from cases adjudicated by courts of general, superior, or inferior jurisdiction, as day from night.    No courts except those made appellate courts, could try appeals or review matters on error.    Justices of the peace would not possess this power, for the reason that they, being courts of general jurisdiction to a certain amount, or inferior courts of common law jurisdiction, it is not necessary that their records shall contain the facts upon which they decide, except when their proceedings are summary under statutory powers; consequently, their adjudications are just as binding until reversed, as the proceedings of courts of general common law and chancery jurisdiction. But in all cases in which any court of any character, acts

under a positive statutory power, that power must be strictly pursued, or their acts may be collaterally impeached. This rule will not render judgments uncertain, nor create confusion. If, on the other hand, the position assumed by the court is to be law, then statutory provisions are mere nullities, and may be regarded, or not, with impunity; and statute law, instead of being what it was intended to be, a certain fixed rule of action, affecting all alike, becomes a means in the hands of ignorant and dishonest persons, of taking from the infant heirs of a deceased person all they possess, in a summary proceeding, with only constructive notice.

I shall present nothing farther upon the question of the sufficiency of the notice to those interested in the estate, only to re-affirm the position assumed, that it is absurd, and in no important particular, complies with the requirements of the statute, and those interested in the estate, are in the same position they would be if no notice had been issued. For additional authorities upon statutory powers, see the following cases: 11 Ills. 637; Blackwell on Tax Titles, 51, 52, 53, 54, 55, 56, 72 to 74, 119, 120, 121; 2 Scam. 23; 4 Hill, 86; 1 Scam. 323; 13 Mass. 453; 11 Ills. 642; 1 Pick. 482; 22 Pick. 387; 2 Ohio, 231; 4 Pet. 249; 16 Wend. 554; 14 Pet. 322; 4 Hill, 96; 1 Barb. 343; 20 Wend. 249; 11 How. 414; 1 Hill, 100. I would crave the particular attention of the court to the case of *William-son et al.* v. *Perry*, 8 How. 495, 540, 650; 3 Dal. 7; 1 Pet. 328; 15 Pet. 699; 3 How. 750; 6 Hill, 415; 9 Conn. 227.

*Secondly.* Admitting, for the sake of the argument, that there is no defect in the proceedings, up to the time that the administrator was licensed to sell, still his sale was void, for reason that he did not comply with the order of the court, as set forth in his license to sell. And here permit me to say, without intending any disrespect to the opinion of the court, that in that opinion, as written, the court has mistaken either the law or the facts of the case. The administrator's power to sell is a special statutory power, and can only be executed in the mode prescribed by the statute, and no

other mode will pass any title to a purchaser. No adjudication by any court, affirming a sale made under a statutory power, can cure a defective sale made under that power. I state this proposition, and will sustain it by the adjudicated cases of the courts of different states, and of the United States, and defy contradiction from any reported cases, viz: That a sale made under and by virtue of a statutory power, if not made in the exact mode prescribed by the statute, is absolutely void, and even after it has been affirmed by a court of competent jurisdiction to order and direct the sale, may be impeached collaterally. Why? Because the administrator has no power to act in any other mode, nor has the court any power to supply any omissions in the proceedings of the administrator. If the Probate Court, by its adjudications and affirmations of a sale made under a defective notice, can supply that defect by such adjudication, and thus render an invalid sale valid, then why is it necessary to have any statute at all?—or why regard the requirements of the statute? The sale is valid if made as prescribed by statute, for reason that he has complied with its requirements; and it is valid if he has not complied with them, by virtue of the affirmation of the court; and in either case, those claiming adversely are concluded by the sale. All that would be necessary to pass the title, would be to make a sale, no matter how irregular. Only get a deed from the administrator and an affirmation by the court, and the title is perfect.

The statute requires that the administrator shall give thirty days' notice, by posting, &c., or the court granting the license "may order such notice to be published three weeks successively in any newspaper, instead of such posting up of notifications, and the executor or administrator, shall publish the same accordingly." Rev. Stat. 708, § 13. This is a positive requirement of the statute. "The administrator shall publish the same accordingly." There is no discretion with him—he must do this act in the exact mode prescribed by statute. In this case, it is conceded that the notice of sale was dated on the 31st of July; that the first

publication was on that day, the second on the 7th of August, and the third on the 14th of August; and that the sale was on the 15th of August—thus giving but fifteen days' notice of the time of sale. The record shows that the order of court, as expressed in the license to sell, required him to give twenty-one days' notice of the time and place of sale, by publishing three weeks, &c. Then the order required three full weeks, the law required the same time, and he must give three full weeks' notice, before he could legally sell. Any sale made by him upon a shorter notice than required by the order of the court and the statute, is void, and no subsequent act of the administrator or the court, can make it binding upon those claiming under the decedent. For authority upon this point, see *Williamson et al.* v. *Perry*, 8 How. 536, 538, 542, 543, 544, 546, 547, 548, 549. On page 544, the court says: " No departure from the manner in which the sale is directed to be made, either under a judgment at law, or a decree in equity, is permitted." On page 548 : " Looking to the conveyance, it is void for want of the performance of that condition precedent, which was made essential, not merely to the commencement of the estate, but to the very creation of the power of sale. See also, C. & H.'s Notes to Phillipps on Ev., 946, 987, 988, 989, 1016, 1289; 6 Wheat. 49; 6 Mass. 40; 14 Mass. 286; 10 Wend. These authorities are offered to show that the administrator must act as directed by statute ; for he has no authority or power for acting in any other manner. See also 4 Wheat. 77; 6 Wheat. 199 ; 3 Denio, 555 ; 14 Mass. 222; 15 Ills. 386 ; 15 John. 537; 15 Wend. 374; 10 Ohio, 139, 278; 1 Mass. 254; 15 Mass. 329 ; 17 Mass. 162, 201 ; 7 Wheat. 59, 115 ; 7 Pick. 554; 16 How. 317. To the last case cited, I would ask the particular attention of the court. The only question in this case, was whether a notice of sale for taxes, was regularly advertised, and the sale regularly made, if it was sold before the expiration of twelve full weeks—the time prescribed by statute. The court held that the term " twelve successive weeks," is as definite a designation of time, according to our division of it, as can be made. When we

Morrow v. Weed.

say a thing may be done in twelve weeks, or that it shall not be done for twelve weeks, after the happening of a fact which shall 'precede it, we mean that it may be done in twelve weeks, or eighty-four days; or as the case may be, that it shall not be done before."

If the authorities above cited and quoted, are law, then is the notice, given by the administrator, of the time and place of sale, defective, and consequently, his sale is void.  No adjudication upon this sale, or affirmation of it, can make it valid, for reason that this special court, although it may have jurisdiction of the case, so far as to order the sale, yet the affirmation of the sale is a subsequent act, independent of the granting of license; and before the court could take jurisdiction of this fact, it must find that the notice was given as prescribed; if not so given, it could no more legally affirm the sale, than it could grant a license to sell without a petition.  This power to affirm, where it exists, exists by virtue of the statute, being a special statutory power.  The facts, upon which the affirmation of the sale is based, must appear of record; a statement made by the administrator, that he had observed the requirements of the law, will not warrant an affirmation of the sale.  The notice itself, must be placed of record, and then if defective, notwithstanding the court may have affirmed, the sale would not be valid, for reason that the facts did not warrant the conclusions of the court.  See the case cited above from 8 Howard.

This, I apprehend, is the true rule of distinction, between courts of general and limited jurisdiction on the one hand, and those acting under a special power, on the other, viz: Those of the first class, when they acquire jurisdiction, can proceed to final judgment, and these judgments, until reversed, will be binding upon all persons, regardless of irregularities; while those courts who act under a statutory power, must show affirmatively by their records, that they have complied with the requirements of the statute, in every particular, or their proceedings may be impeached collaterally.  The same rule marks the line of distinction between

sales made by sheriffs, and other ministerial officers act-
ing as such, and those made by persons acting under a
special power.  The former act by virtue of precepts issued
upon judgments *prima facie* right, and their sales conclude
third persons, notwithstanding their proceedings are irregu-
lar; for reason that the power under which they act, is gen-
eral, whilst the latter, acting under a special power, con-
ferred for a special purpose, must strictly comply with the
statute requisites, for reason that nothing is presumed in
their favor; and if the record does not show a compliance
with the statute on their part, their sale will be void.

The notice of sale not having been given as prescribed
by statute, the next inquiry is, is there any provision made
by statute, for curing the defect?   I claim that there is none.
No court has power, under the statute, to affirm the sale,
nor does the statute require that it should be affirmed.   An
affirmance by the Probate Court, of a sale made by an ad-
ministrator, is void of power, being made without authority
of law.   The last act concerning the sale of real estate of
intestates, by administrators, requiring adjudication under
the statute, is to ascertain whether the facts exist which war-
rant a sale.   If the court is of opinion that they do exist, it
grants the license; and here all adjudication ends.   All that
the probate judge can do, after the license is issued to the
administrator, is to receive, file and record the copy of no-
tice, and proof of the manner of giving it, with the facts of
sale, &c.; but he has no power to affirm the sale, or to dis-
affirm it, and if he does either, his acts are beyond his power,
and void.

On page 708 Revised Statutes, (§ 10,) we find in what
manner title is to pass to a purchaser.   It reads as follows,
viz: "If the facts set forth in the petition, shall be proved
to the satisfaction of the court, and no sufficient cause be
shown to the contrary, the court shall grant the license, and
the executor or administrator shall be thereupon authorized
to execute, in due form of law, conveyances of such real es-
tate as he shall sell, which conveyances shall be effectual to
pass to the purchaser, all the estate, right, title, and interest

Morrow v. Weed.

in the granted premises, which the testator or intestate had therein at the time of his decease, or which was then in any way chargeable, with the payment of his debts."

I think that this section, shows the necessity of a strict compliance with the law, not only on the part of the administrator, but the court also. The acts of the two seem to blend somewhat in this section. The court grants the license upon an inspection of the matters contained in the petition. Here let me ask, if the courts can inspect the matters contained in the petition, and by that act acquire jurisdiction, when that petition does not contain what the statute says it shall contain? Is a petition not in conformity with the statute, such a petition as the court could act upon, when the facts which it should contain, are omitted? But as I have presented this point at length in a former part of this argument, I will now leave it, and return to the question of notice.

The court will perceive that it is the sale made in accordance with the requirements of the statute, that gives validity to the deed, and not the confirmation of the sale by the court. As the power to sell, is one derived entirely from the statute, will a notice, published less than three successive weeks, stating the time and place of sale, be such a compliance with the statute, as to vest in the purchaser an absolute title? Is not the purchaser bound to know the law, and to know that the administrator has complied with it? The Probate Court is required to keep a record, containing all its own decisions, and copies of all petitions, notices, warrants, &c. The purchaser is bound to know that the law has been strictly complied with, and he cannot be protected in his purchase, if he is ignorant of what he might know, and what the law presumes every man does know. The court will recollect, that this is a proceeding *in rem;* that there are no adversary parties; that nothing but a constructive notice was given to those interested; that there was no appearance for the minor heirs; and that the power of transferring the title, is left by the statute, in the hands of one who has no personal interest at stake, and acts independently

of all restraint, except that imposed by the statute.   Then, to say that he can disregard the requirements of statute, is to say that he possesses greater power than his creator; all that would be necessary to absorb the estate, and rob the heirs, is to obtain license to sell, and then do as he pleases. This is not the law, and I hope it never will be.   I hope this court will administer the law in the manner contemplated by its framers, and as it has always been administered, under similar laws in other states.   If a different rule is adopted, then is the estate of a deceased person, lawful plunder for all who, under pretence of legal process, can seize upon it; and better would it be, for men to leave no estates to be settled after their death.

Not only must the administrator give the notice in the mode prescribed, and for the length of time prescribed, but these facts must appear of record.   Not the conclusion of the Probate Court, as to whether the proper notice has been given, but " an affidavit of the executor or administrator, or of the person employed by him to give such notice, being made before the judge of probate, or before some justice of the peace, and filed and recorded, together with a copy of the notice, in the probate office, within one year after the sale, shall be admitted as evidence of the time, place and manner of giving the notice."   Rev. Stat. 709, § 14.   Thus it is seen what must be done after the sale by the administrator, and clearly the law does not contemplate an affirmation of the sale by the Probate Court.

It is not pretended, that there is any evidence of the notice, placed of record ; nor is there any evidence of any kind, to show a legal notice.   True, there is a copy of notice taken from an old file of the papers, giving notice of the sale ; but it is not pretended, that this notice was given more than fifteen days ; and how a court can for a moment, allow that it admits of a question, that such a notice is not a compliance with the statute, is a matter of surprise to me. If the court assumes the province of the legislature, and makes its decisions a healing act to cure the defective proceedings of the administrator, perhaps it can legalize the

sale; but in no other way can it cure the defect. If the statute means what it says, then is the sale made by the administrator, of the premises in dispute in this case, absolutely void.

I have thus far treated this case as though it stood independently of any other statute restriction than those already cited; and have tried to demonstrate, from the facts in the case—from the statutes, and from the decisions uniformly made in other courts upon like questions—that the whole proceeding in this case, is a nullity, for reason that there was not a compliance with the statute. I now wish to apply the test fixed by statute in this case, and in all like cases. Section 36, on page 713, Revised Statutes, reads as follows: "In case of an action relating to any estate sold by an executor, administrator, or guardian, in which an heir, or other person claiming under the deceased, or in which the ward, or any other person claiming under him, shall contest the validity of the sale, it shall not be avoided on account of any irregularity in the proceedings, provided it shall appear:

"*First.* That the executor, administrator, or guardian, was licensed to make the sale by a court of competent jurisdiction.

"*Second.* That he gave bond, &c.

"*Third.* That he took the oath prescribed in this statute.

"*Fourth.* That he gave notice of the time and place of sale, as prescribed herein; and,

"*Fifth.* That the premises were sold accordingly, by public auction, and are held by one who purchased them in good faith."

The court has said, that if the above provisions are not complied with, the sale may be questioned. See *Cooper* v. *Sunderland*, 3 Iowa, 114. In the same case, a sale made by guardian, was held void, for reason that it did not appear that the guardian took the oath, as prescribed in the chapter from which the last quotation is made.

Now, if this section thirty-six means what it says, it means that any person claiming under the intestate, will not be precluded by any sale made by an administrator, unless he

has complied with the statute requirements. It must appear that he was licensed by a court of competent jurisdiction; not by a court who has jurisdiction under the statute to order sales of the estates of deceased persons generally; but, that in the particular case, he possessed competent jurisdiction, by the presentation, on the part of the administrator, of a petition; not a paper that the administrator calls a petition, but a petition containing the proper matter.

This proper matter must be just what the statute prescribes, and nothing less will comply with this section of the statute. Nor can a probate court acquire competent jurisdiction, unless the notice is given to those interested, of the time and place of hearing the petition. This notice must be as prescribed by statute, or the court is not one of competent jurisdiction. If these facts of a petition and notice containing the proper matter, do not appear of record, the court is not one of competent jurisdiction. It cannot give itself jurisdiction by its adjudication, and therefore its order allowing the sale, and its giving the license to the administrator to sell, are void; and the validity of the sale may be inquired into in a collateral proceeding, and the sale may be declared void. This section provides, that the sale shall not be questioned, if he gave notice of the time and place of sale, as prescribed in chapter 10 of this act. Rev. Stat. 706.

The fact of the notice having been published as prescribed, must appear. How? By an inspection of the records of the Probate Court, not by its adjudications; for the reason, that when it has issued the license to sell, it has performed its last act of adjudication—its power is spent—and all its subsequent acts are only those necessary to make and preserve a record of its own proceedings, and those of the administrator. If the notice is not given as prescribed by statute, the administrator has no authority to sell, and his sale can pass no title. Those interested in the estate have the right to give bonds for the payment of the debts of the estate, and thus prevent a sale; and for this reason, the notice must be published the full time. They are entitled to the full twenty-one days, to the last hour of the last day, and

to the last minute of the last hour; and the administrator can-not, by carelessness, ignorance, or design, abridge that time; and whenever it is shown by the record, or *aliunde*, that the notice has not been published the full time required, the sale is void, and may be so declared on a collateral proceeding. In what manner must the fact of the jurisdiction of the court, and the fact that the requisite notice was given, appear? I answer, by the record, and in no other way can it legally appear. By a careful inspection of chapter 12, page 781, Revised Statutes, it will be seen that all the proceedings in cases before the Probate Court, must be recorded. Section 5, page 781, reads: "All his decrees and orders shall be made in writing, and the judge of probate shall record in books to be kept for that purpose, all such decrees and or-ders, and also all wills proved in court, with the probate thereof, all letters testamentary, and of the administration, all warrants, reports, returns, accounts, and bonds, and all such other acts and proceedings as ought to be recorded." This section, I apprehend, clearly establishes the fact that the Probate Court is one of special statutory power, not com-petent to pass upon the question of its own jurisdiction, but whose records must show the facts which give jurisdiction.

It also shows, that the record is the only proof admissible, of the time and place of sale. This must also "appear" of record. Let us take section 11, page 719, Revised Statutes, in connection with section 5, and there can be no doubt of this fact. Section 11 reads as follows: "When the validity of any decree of the Probate Court shall be drawn in ques-tion, in any other suit or proceedings, everything necessary to have been done or proved, in order to render the decree valid, and which might have been proved by parol evidence at the time of making the decree, and was not required to be recorded, shall, after twenty years from such time, be presumed to have been done or proved, unless the contrary appears on the same record."

By a careful examination of this section, it will be seen that no presumptions are to be made in favor of the records of the Probate Court; that all their judicial acts, and the

facts upon which they are based, must be recorded, and that even after twenty years shall have passed away, and then only, can those presumptions be made in favor of those matters, not required to be spread upon the records. I submit whether a record not containing these statute requirements, "is absolute verity," or whether a court can "presume" anything in its favor; or whether a probate court, by placing its own conclusions upon record, can supply any defects which appear upon the face of its proceedings? Can a court say, that a notice not given the length of time prescribed by statute, is a good notice, because the administrator says that he gave notice according to law? If so, then presumptions are as good as facts, and everything omitted can be presumed. Will the statute warrant the court in presuming that by the term "three successive weeks," the legislature intended two "full weeks?" To my mind, this would seem unreasonable; and with deference to the opinion of the court, permit me to say that the language of the statute is too plain, to require, or even permit, a construction of this kind. When the statute says "three successive weeks," if it admits of a construction, or requires any presumptions in order to understand its meaning, I apprehend that the reasonable legal construction, or presumption, would be, to say it means "three weeks," and not two weeks. Nor does the fact that parties in adversary suits, must answer upon ten days' notice, weigh a particle in favor of this reasoning; because, after a party has his ten days' notice to appear and answer, he has right of appeal; and still, before his property can be sold, he is entitled to thirty days' notice of the time and place of sale; and this, too, in a case where he can at once test its legality, by motion to set it aside, and where he has the right to redeem.

In cases of sales by administrators, there are no adversary parties; there is no inspection of his proceedings after sale; there is no time in which the heirs can redeem—but by the act of selling, the estate is forever gone; and thus an infant, without a guardian, incompetent to protect its own interests, is stripped of all, and this, too, upon the presumption that

"three successive weeks" means "two full weeks." It seems to me that this construction is not warranted; nor is any construction which is intended to aid a defective execution of a special statutory power. If, then, the notice is defective, what is the effect? I have shown that there is no court to adjudicate upon this sale, and consequently there can be no appeal. Is not this the only legal conclusion? The purchaser takes title at his own risk, and if the administrator has not complied with the requirements of law, the purchaser, and not the minor heirs, must take the consequences. Then I come to the conclusion that the sale is void, for the following reasons:

1. The Probate Court is a court of special statutory power, and can act in no other mode than that prescribed by statute; and nothing can be presumed in favor of its action.

2. The petition not containing the proper matter, and the notice given to the heirs not being as the statute prescribes, the decree of the court allowing the administrator to sell, was without authority of law, and void for want of jurisdiction.

3. The administrator not having given the notice of sale as prescribed by statute, had no power to sell.

4. The purchaser is bound to know that the statute has been complied with, before he purchases; and if it has not thus been complied with, he takes no title; and those claiming under the deceased, are not prejudiced by his purchase, and can maintain an action of right for the premises sold by the administrator.

In conclusion, permit me to say, that in this argument I have designed to present the law as I believe it is, and have assumed no position which is not supported by authorities entitled to consideration. If I have made myself understood, it is all that I desire. The importance of the case demands a careful investigation, which I have attempted to give to it: important, not for the amount in controversy in this suit alone, but for the reason that a large amount of real estate has passed from heirs of estates, upon proceedings of a like character, and for a nominal value; and, as a general

thing, it has passed into the hands of men who get all they have by virtue of administrators' sales; men who look to no point, except to get by summary proceedings, and summary sales, the greatest amount of real estate, for the least money, and generally fatten on the substance of minor heirs; and who do not hesitate to take from them even their means of support and education, if it can be done under cover of legal procedure; and men who ought not, either in law or equity, to claim the benefit of presumptions. If the court shall decide that administrators must observe the requirements of the statute, in making sales of real estate, I shall feel assured that the rights of orphan children are safe. If, on the other hand, the court shall think that the stern rule of law will not allow them to declare this sale void, I shall bow with submission to that decision, but at the same time, shall feel, that of all persons, the orphan is most to be pitied in its helpless condition.

*Richman & Brother*, for the appellant.

We desire to offer some considerations to the court, and cite some authorities, in reply to the lengthy argument of the plaintiff's counsel. And in the first place, denying the proposition set forth in the outset of the plaintiff's argument, we shall proceed to give the *true doctrine of jurisdiction*, as applied to the case at bar.

The court, in *Homer* v. *Doe*, 1 Carter, 132, sets out the whole question of jurisdiction, under three distinct heads, and collates the authorities to sustain it. Referring the court particularly to that case, we will proceed to give the second head in full, it being the one with which we are most intimately concerned.

2. That a judgment of a court of any of the states of this Union, *having jurisdiction of the subject matter of the suit*, and of the *person*, however *irregular*, is *not void*, and *not impeachable collaterally*, unless it may be for fraud. *Rex* v. *Vincent*, 1 Strange, 481; *Rex* v. *Rhodes*, Ib. 703; *Raines' Case*, 1 Ld. Raym. 262; *Noel* v. *Wells*, 1 Lev. 235; *Bush* v. *Sheldon*, 1 Day's Cases, 170; *Peck* v. *Woodbridge*, 3 Ib. 30; *Kempe's*

*Lessee* v. *Kennedy et al.*, 5 Cranch, 173; *Burke* v. *Elliott*, 4 Iredell, 335; *Diehl* v. *Page*, 2 Greene, 143; *Martin's Lessee* v. *Roach*, 1 Harr. (N. J.) 477, 478; *Obert* v. *Hammill*, 3 Ib. 73; 3 Cowen & Hill's Notes to Phillipps on Evidence, 803; *Ludlow's Heirs* v. *Johnson et al.*, 3 Ohio, 553; *Atkinson* v. *Jordan et al.*, 5 Ohio, 294; *Glover's Heirs* v. *Ruffin*, 6 Ohio, 255; *Pillsbury* v. *Dugan's Adm'r*, 9 Ohio, 117; *Stall* v. *McAlister*, 9 Ohio, 18; *Thompson* v. *Tolmie*, 2 Peters, 164; *Voorhees et al.* v. *Jackson*, 10 Peters, 449; *Grignon's Lessee* v. *Astor*, 2 Howard, 339. We think the foregoing statement of the law of jurisdiction, will aid us materially in the investigation of the case before the court.

Had the Probate Court, in this case, jurisdiction? It will not be denied that the *nature of the case* entitled the Probate Court to take cognizance of the *persons* and *subject matter*. They were peculiarly within the jurisdiction of such a tribunal; it was organized especially for the hearing of such causes. What is jurisdiction? "It is defined by the Supreme Court of the United States, to be the power to hear and determine a cause." 6 Peters, 709. Now what was necessary to bring a case before the Probate Court, so that it could *exercise* the jurisdiction conferred upon it by law? Rev. Stat. 136. Simply the presentation of a petition, setting forth certain facts mentioned in the statute. Of the *sufficiency* of that petition, the court was to *judge* and *decide;* for, " all matters of law and fact, shall be determined by said court, when properly before it," says the statute, (page 136, section 4), and if the decision should be erroneous, a full and adequate remedy was provided by the statute organizing probate courts; for, after using the language just quoted, it goes on to say, " and in all cases, an appeal or writ of error shall lie to the District Court of the county." In further support of the doctrine advanced, we desire to direct the attention of the court to the reasoning of SMITH, J., in *Doe* v. *Smith*, 1 Carter, 457. This was an ejectment, to declare void the proceedings of a probate court, in partitioning certain lands. He first establishes the fact that the Probate Court is one of general jurisdiction, (page

456;) and being satisfied that the case before it came within the general scope of its powers, proceeds to inquire what was necessary to bring a case presented within the operation of such jurisdiction, and· says: "The first step to be taken was, obviously, the application. The statute does not prescribe the mode in which the application should be made, but it was made in the present instance by petition; and upon such application being made, it became the duty of the court to ascertain: 1st. Whether the facts therein alleged were substantially such as to authorize the remedy petitioned for. 2d. Whether the requisite notice had been given to the other owners. 3d. Whether the facts alleged were stated with sufficient form and precision. 4th. Whether the statements contained in the petition were true. If the first inquiry were answered satisfactorily—that is, if sufficient facts were alleged to bring the case presented, within the jurisdiction of the court—such jurisdiction at once attached; and the remaining subjects of inquiry, became the subjects of judicial action, but were not questions necessarily incident to the exercise of jurisdiction. Jurisdiction must necessarily exist, before such questions can be examined. In this case, the petition filed by Kendrick avers that he, together with other persons named, were the owners of several tracts of real estate, situated in a certain congressional township and range, and that he desired to have partition thereof. This, (says the court,) we think was sufficient to satisfy the first subject of inquiry noticed above, (viz: the application,) and to authorize the entertainment of jurisdiction in the case."

The court will perceive that this was a case before a probate court, and a proceeding *in rem;* yet we find the court deciding the question of its own jurisdiction, upon the presentation of a petition, even though the statute did not prescribe the mode of application. The court decided, first, that a petition was the proper mode; and second, that the petition presented contained the proper matter, &c.; and these proceedings, says SMITH, J., could not be collaterally impeached. The petition was defective; it did not mention

the state or county in which the land was situated; one tract was mis-described; and five other distinct objections were made to the proceedings; but the court overruled them all, and on page 459, says: " Having thus arrived at the conclusion that the Probate Court had jurisdiction, &c., &c., the remaining objections may be easily disposed of. The sufficiency of the report of the commissioners, the proof of the title of the petitioner, and the ascertainment of the relative shares of the several parties, were all matters of subsequent adjudication, and the decisions of the court thereupon, cannot be controverted collaterally."

It is admitted in plaintiff's argument, that the judgments of courts of general jurisdiction, are not impeachable collaterally; while those of inferior and special jurisdiction, are. We have already shown, in *Doe* v. *Smith*, that a probate court was there regarded and treated as a court of general jurisdiction; and we now call the attention of the court to the opinion of CATON, J., in *Propst* v. *Meadows*, 13 Illinois, 168. He says: " The county court, although of limited, is not, strictly speaking, of inferior jurisdiction, and certainly is not a court of special jurisdiction. It is a court of record, and has a general jurisdiction of unlimited extent, over a particular class of subjects; and when acting within that sphere, its jurisdiction is as general as that of the Circuit Court. When, therefore, it is adjudicating upon the administration of estates over which it has a general jurisdiction, as liberal intendment will be granted in its favor, as would be extended to the proceedings of the Circuit Court; and it is not necessary that all the facts and circumstances which justify its action, should affirmatively appear upon the face of its proceedings."

In the *Lessee of Adams* v. *Jefferies*, 12 Ohio, 272, the court observes: " It is necessary that such tribunals (probate courts) show they act within the scope of their powers; but after jurisdiction is once acquired, however irregular or erroneous their proceedings may be, they cannot be *collaterally* impeached, and they concluded all persons, unless annulled by *certiorari* or appeal." And see cases there cited.

In *Lessee of Ewing* v. *Higby*, 6–7 Ohio, 342, the court observes : " An order of the Court of Common Pleas to sell the land descended to the heirs, on the petition of the administrator, is the order of a court having jurisdiction of the subject, and is as conclusive on all interested in the land, as a judgment or decree.  A purchaser under such order holds his title as securely as a purchaser at sheriff's sale.   To defeat his title, the order can no more be attacked *collaterally*, than can a judgment or decree ; and, although it may be erroneous or irregular, a title acquired under it by a stranger, before it is reversed or set aside, is as good as though it were not erroneous or irregular." 3 Ohio, 257 ; 4 Ib. 131 ; 2 Peters, 163 ; 2 Binn. 46.   In *Heirs of Ludlow* v. *Johnson et al.*, 3 Hammond, 553, the court says: " If the Court of Common Pleas, acting as a probate or orphans' court, had jurisdiction, an end is put to the matter. We cannot inquire *collaterally*, whether that jurisdiction was properly exercised.   The order may have been unadvisedly or erroneously made, but the purchaser has innocently acquired rights, of which he cannot be divested, so long as it remains unreversed." In *Thompson* v. *Doe*, 8 Blackf. 337, the court authorized the administrator to sell land at *private sale*, contrary to the statute, and it was held that the order of sale was erroneous, but that it was *not a nullity*, and the purchase under it *was valid.*   See also, 15 Ohio, 689 ; 18 Ohio, 368 ; 5 Blackf. 487, on this subject.

We also think that section 10, chapter 10, page 708, Rev. Stat., shows clearly that after jurisdiction had once attached, the court had power to determine upon all points that might arise, and that its decisions could not be collaterally inquired into, but only in the manner provided by the statute, (page 136, § 4 ;) for it expressly says, " If the facts set forth in the petition, shall be proved to the *satisfaction of the court*, and if no sufficient cause be shown to the contrary, the court shall grant the license, and the executor or administrator shall be thereupon authorized to execute in due form of law, conveyances of such real estate as he shall sell, which conveyances shall be effectual to pass to the

purchaser all the estate, right, title and interest in the granted premises, which the testator or intestate had therein at the time of his decease." Thus declaring, in effect, that if the court is satisfied, upon due inspection, it shall grant a license to sell; by which authority, the administrator conveys to the purchaser all the decedent's interest; and such a proceeding, in the nature of things, must be binding, until set aside or reversed in the statutory manner.

The plaintiff's counsel briefly refers to the case of *Grignon's Lessee* v. *Astor*, 2 Howard, 320, and says that the petition in this case contained "the proper matter," and therefore conferred jurisdiction. But the case shows nothing of the kind. It distinctly says, that the jurisdiction was conferred by the presentation of a petition, and that the decision of the court as to its sufficiency, was the exercise of jurisdiction. See page 339. But the court went still further, and held, that "the granting of the license was a binding adjudication; that all facts necessary to give jurisdiction, as well as to warrant the license, existed; and that the record was conclusive evidence thereof." This whole case maps out the law which governs cases like that under consideration, in a clear and luminous manner; and we see nothing in the argument of plaintiff's counsel, or the array of cases therein cited, to weaken its force. It is evidently a formidable obstacle in the learned counsel's way, and he hastily passes it by, pausing but a moment to misstate a few of its points. The court will observe that in the case referred to, principles are not only enunciated, but they are supported by numerous unquestionable authorities, and a train of masterly and comprehensive reasoning, which, we think, must forever set this subject at rest.

Plaintiff's counsel has cited a great many cases, apparently in support of his positions; but do they sustain him? Let us examine a few of them. He relies strongly on 6 Wheaton, 119; but an attentive perusal of this case shows, that the court never had jurisdiction. See page 125. He makes a great parade of *Williamson* v. *Berry*, 8 Howard, 537, and onward. But there are several things to be noticed

in this case. This was a sale by a trustee, of certain premises, under a private act of the legislature of the state of New York, passed to remove obstacles in the way of executing certain trusts under a will; and it was held he had only a special power, and that if he exceeded the power, his acts were void. But in this case, the court admitted that if the chancellor had jurisdiction, his proceedings could not be collaterally impeached. But they denied his jurisdiction to do certain things, and on that ground declared his order, &c., void. We would respectfully, but earnestly, direct the attention of the court to the dissenting opinion in this case. Page 550. The private act, (which was passed for the relief of one Thomas B. Clarke,) is recited in the report of the case; and a perusal of it will show that there can be but little analogy between the acts of a trustee under it, and the acts of a probate court, or the acts of an administrator, whose doings are duly confirmed by the court appointing him. But even in that case, the court were divided. TANEY, J., CATRON, J., and NELSON, J., dissented; and the latter delivered a powerful opinion, overturning, as we think, the decision of the other judges. He (plaintiff's counsel) cites *Young et al.* v. *Lorain et al.*, 11 Illinois, 625, but why he did so, it would be difficult to tell, unless for our benefit. This was a guardian's sale of the land of his wards. The petition did not comply with the statute; there were irregularities all the way through; yet the court sustained the proceedings of the probate and circuit courts. But the guardian's deed gave a defective description of persons and premises; and the wards having afterwards obtained a patent for the land, the court held that this new title did not enure to the benefit of the guardian's grantees, and that they were not estopped from setting up this new title. In this case, the court said: "Was the aid of the court properly invoked? If so, then the court acted within its jurisdiction, and every presumption is in favor of its judgment. Indeed, nothing can be alleged against it in a collateral proceeding." We should like to know, in the light of a careful perusal of this case, what becomes of the authority of *Smith* v. *Hielman,* so

strongly relied on in plaintiff's argument.   We think the new case overrules the old one.

Plaintiff's counsel cite many other cases; but a careful consideration of them, will show that they all, or nearly all, support the great principle underlying this whole class of questions, viz: that if the court have jurisdiction, its proceedings are *coram judice*, and cannot be collaterally questioned.   CATON, J., declares the whole doctrine in his clear and lucid opinion, in the case last referred to, (11 Ill. 637,) and clearly establishes all for which we have contended.

There is an attempt, in plaintiff's argument, to lug in decisions upon tax titles in support of his cause; but we think they clearly rest on a different principle.   The gross inadequacy of the sums paid for these titles, is the chief reason for viewing them with great strictness.   Lands at tax sales, are given away, almost literally, and such titles should be scanned closely.   See Blackwell on Tax Titles, 67, 68.   But Blackwell does not put administrators' sales on a level with tax sales; he merely uses the former for illustrations—points out the similarities existing, and says that strictness must be observed in both classes of cases—which might readily be admitted.   But what has this, or the counsel's learning on the subject of statutory powers, to do with overturning the proceedings of a court of general jurisdiction, in a collateral proceeding?   The citation from Blackwell, on page 3 of the plaintiff's argument, with regard to reviewing a decision collaterally, applies only to "an inferior tribunal of limited jurisdiction."   But the Probate Court is not such a tribunal; over a particular class of subjects, it has a general jurisdiction of unlimited extent.   13 Illinois, 169; 2 Howard, 319.   What, then, becomes of the counsel's argument?

We now come to that portion of plaintiff's argument which treats of the administrator's notice of sale; and this question, we think, is swallowed up in that of jurisdiction. It is a matter with which we have nothing to do; it has been once adjudicated by a court of competent jurisdiction, and declared to be in compliance with the statute.   The Probate Court had only to be "satisfied" of the sufficiency

of the administrator's notice of sale, in the same manner as it was satisfied that the facts set forth in the petition were proved. Rev. Stat. 708, § 4. Jurisdiction had then attached, and however irregular any subsequent decisions on any points arising, might be, they were only the subject of a remedy provided by the statute, creating the tribunal itself, to wit: by writ of error or appeal. Rev. Stat. 136, § 4. But as the learned counsel devotes a large space to the consideration of this subject, it will be well enough, perhaps, to examine his foundations, and the superstructure reared thereon. Were the simple question, whether the requisite notice of sale had been given, in this case, before the court directly and regularly, it might be deemed insufficient. But it is one of a series of acts, already passed upon, by a competent court, in the regular exercise of its jurisdiction—a court that had, in the language of the statute, full power " to determine all matters of law and fact properly before it;" and its decisions cannot be reviewed in a collateral action.

The case of *Early* v. *Doe*, 16 Howard, 615, has been referred to, to show the insufficiency of the notice of sale. But then, the single question whether the requisite notice of a sale of land for taxes, had been given, was the only issue; and the question was before the court regularly, by writ of error, (page 616,) and not collaterally; and the court decided the notice insufficient. Plaintiff's counsel craves " the particular attention of the court" to this case; yet it is not in point, and fails to support him. And now let us again recur to the case of *Young et al.* v. *Lorain et al.*, 11 Ill. 625, cited by the counsel in the former part of his argument, with approbation. In that case, the court held, "that all objections taken to the notices of sale, posting them, and other matters involved in the adjudication of the Circuit Court, either in granting the original order of sale, or in the final order confirming the report of the guardian, could avail nothing in a collateral action;" and on page 640, the court says: " The objection that the report of the guardian was not confirmed by the court, cannot be sustained; the order

Morrow v. Weed.

made upon the return, was a substantial and sufficient con-
firmation." In the case before the court, the sale was con-
firmed and pronounced in accordance with the statute, and
we cannot go behind those proceedings in this action. If,
then, as we have shown, cases to which the counsel calls
" the particular attention" of the court, fail to sustain him;
and if others directly contravene the doctrine he attempts to
establish; his foundations are weak, and the superstructure
of cases not particularly referred to, must totter and fall to
the ground. But *Lessee of Payne* v. *Mooreland*, 15 Ohio,
435, settles this whole matter of notice; and we refer the court
especially to that case. It was there held, in an attachment
case, " that the court acquired jurisdiction by issuing of pro-
cess, predicated upon the requisite affidavit, and the attach-
ing of the property; and, if after thus obtaining jurisdiction,
the court proceed to render judgment without the publica-
tion of notice, such judgment is not void, and cannot be im-
peached collaterally, but must be reversed upon writ of
error."

The plaintiff's counsel, throughout his entire argument,
fails to preserve the distinction between reviewing the pro-
ceedings of a court by writ of error or appeal, and collate-
rally; and does not perceive that the strictness he urges
with regard to the action of probate courts, may be, and no
doubt is, to a certain extent, true; it is even true of the Pro-
bate Court whose proceedings he is now endeavoring to
overthrow. It was intended by the law makers, that the
requisites of the statute should be fulfilled. But what if
they were not? was the plaintiff without remedy? Cer-
tainly not. The remedy was full and adequate, and clearly
pointed out, as we have already shown. The fact is, the
counsel is engaged in a fruitless attempt to show certain pro-
ceedings to be absolutely void, when they were only voida-
ble. He seems to think that " the fact that parties in adver-
sary suits must answer upon ten days' notice, does not weigh
a particle in favor of the reasoning of the court, as to the
sufficiency of the notice of sale, because, after a party has
his ten days' notice to appear and answer, he has his right

of appeal!" But there was an appeal as well, from the Probate Court's decisions; and a party, in both cases, may suffer his remedy by lapse of time, to become useless to him. Upon recurring to the Revised Statutes, (page 720, from § 21 to § 30,) it will be found that very liberal, and indeed extraordinary provisions, are made with regard to appeals from the Probate Court; allowing the appellant a whole year in which to take his appeal, if he shall have omitted to take the same according to law, without default on his part; and if without the United States at the time a decree was rendered, three months after his return. With this almost singular provision in plaintiff's favor, which was suffered to pass by unused, the counsel has the hardihood to come in at this late day, and ask the court to declare the proceedings of the Probate Court void, in a collateral action. And because of his negligence, are innocent purchasers, and their grantees, to be stripped of their property in a collateral action, to overturn the proceedings of a court of general jurisdiction, in a certain class of cases? We think not.

It will not be overlooked that the defendant in this case, is a second purchaser—that is, he is the grantee of the purchaser at the administrator's sale—and therefore stands on still better ground than his grantor would have done; for it has been distinctly held that such a sale may be voidable as to the first purchaser, yet valid as to the second. 6-7 Ohio, 490.

The plaintiff's counsel winds up his argument with a pathetic appeal in behalf of the rights of orphan children, about whose welfare he seems to entertain a peculiar solicitude. But we apprehend that if the hardship of the case has any weight in the final decision of this cause, it would be no difficult task to show that a different decision from the one already given, would work infinitely greater hardship; as he admits that " a large amount of real estate has passed from heirs of estates, upon proceedings of a like character;" and we might add, the same is now in the hands of innocent purchasers, or their grantees.

In the foregoing argument, we have attempted to deal

rather with the principles of law by which this case must stand or fall, than to reply *seriatim*, to the arguments of plaintiff's counsel.    For, if our positions be correct—if they are noted and grounded in the perfection of that reason denominated law—the tact and ingenuity of the learned counsel avail him nothing; and they must yield to the controlling power of fixed and immutable rules, founded upon the wisdom and policy of ages, and sanctioned by the universal experience of mankind.    And we will conclude with the fitting remarks of HITCHCOCK, J., in *Heirs of Ludlow* v. *Johnson et al.*, 3 Hammond, 553: "While lands are sold for the payment of the debts of the deceased persons, every inducement should be held forth to encourage purchasers to give the full value of what they buy; and nothing can have a greater tendency to produce this effect, than to afford them, when they have purchased, a reasonable protection.    There is no good reason why those who purchase from an administrator, should not be viewed with the same favorable eye, with those who purchase from sheriffs.    In either case, it is proper that the order or judgment should remain final and conclusive, upon all parties concerned, until set aside, reversed, or annulled."    To sum up the whole matter, from a review of the authorities, we arrive at the following conclusions:    1. The Probate Court had jurisdiction of the persons and subject matter.    2. It was a court of general jurisdiction; and, 3. That therefore its proceedings cannot be collaterally impeached.

WOODWARD, J.—In this cause, a rehearing was granted, upon the petition of the plaintiff and appellee.    The granting a rehearing, in our present practice, does not import a reversal of the opinion of the court, as under the former and the common law course.    It is, now, but a re-argument and reconsideration, on the petition of the party.    When the court itself desires it, the cause is set down, technically for re-argument.    In neither case, does it necessarily imply that the court is convinced that it has fallen into error.    In the present cause, the rehearing was granted for several reasons.

The questions are, in their nature, important, as bearing upon a large class of sales of real estate. The pressure of business rendered it necessary to make the former opinion of the court too brief, perhaps not entering into a detailed exposition of the questions, as may have been desirable for the sake of clearness. We announced the rules, but left their application to the facts, to be made by the mind of the reader. And further, the counsel seems to have misapprehended the thought and reasoning of the court, and to apply to one part of the cause, reasoning or ideas which were intended for another. This arises from the opinion being too general. We have been willing, therefore, to reconsider the cause—to look at it more in detail, and see if we have fallen into error.

The subject is a difficult one. The decisions are very numerous, but for the most part, do not stand on rule; at least, the rule they recognize, is so general, that it admits, within its ample range, almost any construction or application in details. The rule referred to is, that inferior jurisdictions and special authorities, must show their jurisdiction, and must pursue their authority strictly. It was not necessary for the petitioner to labor to cite a long train of authorities, to prove this proposition. It is stated in all the forms of which it is susceptible, in the various cases, and is repeated in a large number of them. The doctrine is admitted by all. Whether a court of probate is an inferior court, in the technical sense, is not a question altogether so well settled. It is so called in many cases, it is true, and probably the courts of New York have settled the question for that state. But the question is held otherwise by the courts of some states, and it is doubted by others. This, however, has not been made a point in the present cause. Leaving that troublesome question, we have assumed the court to be an inferior one, in the technical acceptation.

There is no difficulty in proving or in admitting the common rule in relation to inferior jurisdiction and special powers; the difficulty lies in the application of the rule to details. In reference to the exercise of a statutory power, we

Morrow v. Weed.

find various adjectives used; such as "closely," "strictly," "rigidly," "exactly." These are used by counsel. They are used in the head notes of cases, and not unfrequently in the opinions of courts. Now, if they mean anything, it is that the authority is to be exercised literally; and yet it is believed that not a case can be found, in which a court has said that such a power must be followed with literal exactness—that is, literally. The truth is, that the rule, stripped of this verbiage, and divested of expletives, is, that when a special authority or power is given, and the manner of its exercise is pointed out, the power or authority must be pursued in the manner dictated. It is probable that no court has ever held, that the slightest possible deviation is fatal, and yet this is the inevitable consequence, if the use of the above adjectives is authoritative. The only true rule of construction in this respect, and that which the courts have, sometimes in terms, and uniformly in practice, adopted, is that the power is to be exercised substantially in the manner prescribed. These ideas will be adverted to and illustrated hereafter, under the points made and the cases cited.

The argument derived from the supposed disregard for the interests of minor heirs, and the alleged sacrifice of their property, is undoubtedly entitled to its weight, but yet it does not afford much assistance towards forming a rule by which all cases are to be tried alike. It teaches, however, that a fair degree of strictness in the observance of the laws, should be required. But there is no security for any one, except in the tribunal which administers the law in the first instance. There has always appeared to be a degree of absurdity in requiring a notice, or other process, to be served on an infant child, the only use of which would be the bringing the knowledge home to the friends incidentally. These friends, too, seldom discover any advantage to the minor in setting the proceedings right, and in keeping them correct, so as to be binding; but they complain of irregularities at a subsequent day, when circumstances have changed. And however true it may be, that speculators stand ready to purchase cheaply the property of minor heirs sold under the

order of court, there is undoubtedly an equal truth on the other side, which charges a dullness which does not perceive the enormity of a technical error, until the property has greatly increased in value. Neither of these hostile views can have weight in forming a judicial opinion. But there is a thought well worthy of consideration, which is, whether the uncertainty of these sales by administrators and guardians, does not prevent the property selling at a fair rate; and whether upholding them would not promote the interests of the heirs and minors themselves. Why does not property sold for taxes, bring a respectable value? Every one knows that it is owing to the want of confidence in the title; and so it is measureably, in respect to these other sales. These remarks are not made as an argument on which a judge can sustain a sale, but as a tolerably fair answer to the usual complaints of those who seek to set them aside. It is but too true, that this class of persons have but little care taken of their interests, when it is greatly needed, and the law maker cannot exercise too much caution in preserving their rights; but it is possible for both the law maker and the judge to surround the proceedings with small technicalities, which are detrimental to all who are concerned.

Before taking up the matter of the case, one or two explanatory remarks should be made. The cases on the subject of these sales, are exceedingly numerous; and it is impossible, as well as useless, to attempt a review of all of them; but in this and the preceding examinations, all which were accessible have been examined; and all those cited by the plaintiff, have been seen, unless it be where there is a mis-reference, of which there are several; and in those instances, the case intended has probably been found. There may be instances where we shall have occasion to refer to cases which we have not seen; but this is done only upon the authority of other cases, or of proper books. This was remarked in the case of *Cooper* v. *Sunderland*, where many such were cited; but it was thought advisable to give the references, for the benefit of those who may have access to them; and if some of them are not to the point, the fault is

in the authors from whom they are taken. It will not be necessary to refer to that very large class of cases, (many of which are cited by the plaintiff's counsel,) which relate to the general rule before stated, concerning courts of inferior and limited jurisdiction; or those which relate to special authorities; or those which teach that you may inquire into the jurisdiction of all courts, and those which lay it down as a fundamental rule, (but subject to some exceptions,) that a party who is to be deprived of his rights or property, is entitled to notice. These ideas are too well settled to require support. We shall assume that when the books say the requisite facts must appear, &c., and use similar expressions, the appearance may be by the record proper—the entries— or by the papers of the case on file, or, (generally,) by evidence. And when the books speak of facts appearing on the face of the record, or on the face of the proceedings, they often refer to a manner of doing business which has never existed with us. In the most, if not all, of the older states, a complete record is made in each cause; whilst with us, this is not done, even in our superior courts, but the files take the place of the greater part of the record proper.

We proceed now to examine the cause in detail, with reference to the objections made to the validity of the sale. The plaintiff shows title, and should recover, unless that title has been divested by the administrator's sale. From the nature and position of the cause, the objections to the sale were to be pointed out on the trial; and in the argument, there are no pleadings setting them forth. The reasons given why the sale is invalid, are the following:

1. That the administrator's petition for leave to sell the real estate, does not state the value of the personal property.

2. That no specific account of the debts due from the deceased, is filed with the petition.

3. That the publication of the notice of the sale, was insufficient.

4. (In the petition for a rehearing.) That the notice calling upon all persons interested, to show cause why a sale of the realty should not be ordered, was insufficient in itself.

The first objection is, that the administrator's petition for leave to sell, does not state the value of the personal property. By statute, (1843, chap. 162, sub-chapter 10, 658,) it is provided, that when the goods and chattels of a deceased person are insufficient to pay all his debts, with the charges of administration, his administrator may sell the real estate, upon obtaining a license therefor. By section three of the act, it is provided that, "in order to obtain such license, the administrator shall present to the court, a petition setting forth the amount of the debts due from the deceased, as nearly as they can be ascertained, and the amount of the charges of administration, and the value of the personal estate," &c. And section nine provides that, "if the facts set forth in the petition, shall be proved to the satisfaction of the court, and if no sufficient cause be shown to the contrary, the court shall grant the license." That portion of the record, and the facts on which the questions arise, are given in the former opinion, the record being quoted literally. It will be perceived that the amount of the debts and administration charges, is given, and then it is alleged that the personal estate is insufficient to discharge that amount. The question is, whether this last allegation is sufficient. It is not literally what the statute calls for, but it is equivalent to saying that the personalty does not amount to so much as the debts and charges. A few cases will be referred to, which approach the point nearest, and these will be principally from New York, where the courts have probably gone farthest on these questions, and perhaps farther than sound reason dictates.

The case of *Corwin* v. *Denning*, 11 Wend. 648, was a suit for partition, in which the decree of partition was held void, for the reason that there had been no advertisement to bring in unknown owners, as was required by the statute. They were necessary parties. But in this case, (see 17 Wend. 483, and 21 Wend. 40,) by the statute of New York, an administrator petitioning to sell real estate, was required to file an account of the debts and of the personal estate. In *Ford* v. *Walsworth*, 15 Wend. 450, there was no such account filed, nor any substitute for it, and the order of sale was held in-

valid, and of consequence, the sale also. The same case was again before the Court of Appeals, in 19 Wend. 334, where it was held, in express terms, that secondary evidence might be received to show that an account was filed, if it could not be found among the papers of the court. The case cites 12 Wend. 533. This case meets the observation before made, concerning the meaning of the word "appear."

In *Bloom* v. *Burdick*, 1 Hill, 139, the administrator did not file his inventory of the estate, until he filed his petition for leave to sell realty; and the court permitted the inventory to stand for the account called for by the statute. This is a departure from the strict requirement of the statute. But the court reason that the account was required, to show the present state of the property; and that if the inventory was made at that time, that is, at the time of filing the petition to sell, it answered the same purpose, and was sufficient to meet the demand of the statute. The idea of an equivalent or substitute, is adopted. *Corwin* v. *Merritt*, 3 Barb. 341, was a case of a sale by an executor, under the authority of the Surrogate's Court. The sale was held void, because no account of the property and debts of the deceased, was presented; and because there was no proof of any kind, of the publication of the order. We come now to *Atkins* v. *Kinnan*, 20 Wend. 241. The statute of New York required, that on a sale of real estate by the administrator, in the deed of conveyance, the surrogate's order should be set forth at large. The deed was held insufficient, for want of thus setting forth the order at large, at least, until rectified by an application to the chancellor, under the provisions of another statute. The court say: "We do not say it should be literally recited, but it is impossible to say that a document is set forth at large, unless every part of it is substantially presented." Here is an act—the copying of a paper—in its nature allowing, if not requiring, a greater degree of literalness than any other; and yet that court would not require a literal performance of it, but would hold a substantial one sufficient. This case contains other remarks bearing upon some of the points before us. The court say: "It is clear

that we cannot, in this collateral proceeding, inquire whether, in fact, there were any debts due, over and above the personal estate."· And, speaking of the difference between want of jurisdiction and error, the court proceed: " In the former case, the whole is *coram non judice* and void ; in the latter, the proceeding cannot be impugned in a collateral action, even though it be erroneous on its face, and even though it relate to a fact, which in a former stage of the proceeding, might have been essential to confer jurisdiction ;" citing *Betts* v. *Bagley*, 12 Pick. 582, which is quoted below. In this case, the court seem to come near to deciding on the sufficiency of the account presented. The question was, in fact, whether the paper was an account. It ·came near to being what our statute requires, that is, a statement of the amount of indebtedness, rather than an account of the debts. It contained three parts : 1. The amount of debts owing in New Jersey.· 2: The amount owing in New York. And, 3. A specific liability to a certain person on a certain matter. The court sustained it on the last, and did not adjudicate the two former.

The plaintiff in the case at bar, makes particular reference to the case of *Corwin* v. *Merritt;* to *The Matter of Underwood*, 3 Cow. 59, in which a publication for six weeks, was held not to be a sufficient compliance with an order directing a notice of ten weeks ; and to *Kennedy* v. *Greer*, 13 Ill. 432. The only matter in point in this last case, is the reiteration of the general proposition, concerning the conclusiveness of the judgment of courts of limited jurisdiction. The discussion is upon the character of the circuit courts of the state of Illinois. *Smith* v. *Hielman*, 1 Scam. 323, held that when the statute requires an order to be set out in full, it is not sufficient to set it out in substance. This is, so far, against *Atkins* v. *Kinnan*.

The case of *Young* v. *Loraine*, 11 Ill. 625, was an action for the recovery of land sold at a guardian's sale, and impeaching the former proceedings. The former guardian resigned; and a new one was appointed, by whom the land was sold ; and it was doubted whether the first guardian

could resign. The Supreme Court say : " Remember, the objection is made in a collateral proceeding, and not on appeal. In this collateral action, you cannot inquire into the sufficiency of the reasons for removing the guardian ; the court had jurisdiction to remove." . Objection was also made to the sufficiency of the petition in its allegations, and the court says : " It states all the statute requires, except that, instead of averring that, ' the guardian has faithfully applied all the personal estate,' &c., it states that no personal property of the ward had ever come to his hands. We do not think this departure from the expressions of the statute, fatal to the jurisdiction of the court, although it must be admitted that the averment is somewhat equivocal. The meaning of the statute is, that the guardian should have faithfully applied all the accessible personal estate ; and we are disposed to hold that the averment here is equivalent to that." This is quite as strong a case, if not a stronger one, than that at bar. The case of *Ewing* v. *Higby*, 6-7 Ohio, 340, was on an administrator's sale. There was a question of minors having notice. The guardian of two appeared. " The court had the return of process served on Samuel and John, and the appearance of the guardian of the lessors, and acknowledgment by him, in open court, of notice of the petition. The court, when they made the order, must have determined that by serving process on Samuel and John, and by the appearance of the guardian of the others, the four heirs were parties to the petition, within the meaning of the act; and this was a matter of which they had jurisdiction. Indeed, they were compelled to determine this question. They could not get along without." Here was a question of the sufficiency of notice, service, and appearance, and whether persons were made parties; and the higher court' held it a matter for the lower court to decide, and would not inquire into it collaterally. In *Paine* v. *Moreland*, 15 Ohio, 435, the doctrine is, that the court acquire jurisdiction in attachment, by the filing of the proper affidavit, the issuing of the writ, and the attachment of the property ; and that if, after this, they render judgment without publication, it is

not void; but that having acquired jurisdiction, it is not lost by a subsequent irregularity.

Now, taking the averment which the petition, in the case at bar, does make, and the finding of the court as to the necessity of the sale, we feel that we are justified by the cases, in holding that the averment of the petition, is an equivalent for the statute; and that it was within the jurisdiction of the court to decide on the sufficiency of the petition. Other cases, also, and some hereafter cited, have a bearing upon, and support the same doctrine.

The second objection made in the principal cause is, that there is no specific account of the debts due from the deceased. Upon this, it is sufficient to remark, that the statute does not require it. It calls for the amount of the debts and charges, and not for an account of them. It is not like the New York statute, and therefore *Ford* v. *Walsworth*, 15 Wend. 450, and 19 Ib. 334, and *Corwin* v. *Merritt*, 3 Barb. 341, are not entirely similar to the present case. In the case before us, the amount of the debts and charges is given. There was enough alleged to call into action the powers of the court. If a demurrer should be made the test, as suggested by counsel, we doubt whether he would venture a general demurrer to this petition, under the old practice, when judgment on demurrer was final.

The third objection to this sale is, that the publication of the notice of sale was not sufficient, for that it should have been published three full weeks, whilst it was published but two full weeks and a fraction. The act, (chap. 10, § 13,) authorizes the court, in lieu of another notice, to order notice to be published "three weeks successively, in any newspaper." In this cause, the court ordered it published in that manner. It was published on the 31st of July, and the 7th and 14th of August, and the sale was on the fifteenth. In the former opinion, we said that the terms of this act admit of the question, whether three full weeks were required, or only a publication on some day in each of three weeks, so as to insure at least two full weeks' notice. It may be suggested, appropriately, in reference to this, that whilst peti-

tioner is pressing for a strict, rigid, even literal, application of the statute, on this point he departs from this course, and wishes a little relaxation of the words; he seeks a meaning; he puts a construction upon them. They do not say three full weeks, but he says they mean that; that that is the true and legal construction. It seems to us, that the administrator has, in this, at least, followed the statute strictly, and we should be loth to apply a construction which loosened the terms, *ex post facto* as it were, in order to destroy a sale. The only adjudication of the court upon these words of the act, would be in the order for publication, and that is in nearly the same language with the act. The latter says, "three weeks successively," and the order says, "three successive weeks." It is probable that any one giving an *a priori* and directory construction to these words, would prefer to give that which called for the longest time; not because the words necessarily mean that, but in consideration of the object of the publication. When, however, an accurate construction becomes necessary, and the consequence is the sustaining or overthrow of sales and titles which have stood for ten years, we cannot say that the statute necessarily means, in these words, more than it says. We are referred to the case of *Early* v. *Doe*, 16 How. 615, (21 Curtis, 317,) as conclusive for the other view. We would refer to the case as sustaining the view we have taken. Let us look at the case carefully, and see the facts and the reasoning of the court. It relates to the notice of a sale for taxes. The statute required the notice, to be inserted " once in each week, for at least twelve successive weeks." The notice was inserted from the 26th August to the 15th November, inclusive, the latter day being the day of sale, and making eighty-two days, and not eighty-four. The court say, the question is, whether the statute means that twelve insertions in successive weeks is sufficient notice. " We do not doubt," say they, " if the statute had been ' once in each week for twelve successive weeks,' a previous notice of the particular day of sale having been given to the owner, that it might very well be concluded that twelve notices, in different successive weeks,

though the last insertion was on the day of sale, was sufficient." This remark covers the present case precisely. Then the court proceeds: "But when the legislator has used the words 'for at least twelve successive weeks,' we cannot doubt that the words 'at least,' as they would do in common parlance, mean a duration of the time there is in the twelve weeks, or eighty-four days." They say that the other construction leaves out of consideration the words "for at least." There is a slight ambiguity in a part of their remarks, but they say explicitly, we do not doubt that if the statute had been, "once in each week for twelve successive weeks," it would have been good, though there were not eighty-four days.

The fourth objection to these proceedings, is made to the notice of the pendency of the petition for leave to sell. The objection is to the qualities of the notice itself. The notice is thus presented in the record of the proceedings of the Probate Court: "At a court held at Bloomington, on the 25th July, 1846, the administrator filed the following affidavit: 'All persons interested are hereby notified,' &c., that he would petition for license to sell, the hearing of which will be on Saturday, the 25th inst., at Bloomington, before his Honor, T. S. PARVIN, judge of probate, when and where," &c. The affidavit of publication attached, is entitled of the territory of Iowa and county of Muscatine. The objections are, that the county and state do not appear in the notice; the lands are not described; and the court is not named, but the judge only. It will be noticed that this is but the recital, in the affidavit or record, of the body of the notice, and it does not import that there was not a proper caption, showing the state, county, and even the court. But we do not propose to examine this objection in detail, for there are two observations to be applied to it: *First*, The court finds, expressly, "that all interested have been duly notified;" and under this, we will presume that the paper possessed the requisite external forms. And, *Secondly*, This objection is made for the first time now, on the petition for a rehearing. It was not presented on the first argument.

The first three objections named above, were the ones presented, as shown by the written brief of the party.

But however this may be, we must set down his record of facts, and the adjudication of the court, as sufficient to cover the objection. In this, we feel sustained by the cases before cited, but desire to add two or three to the list, as throwing light on these questions. The case of *Dykman* v. *The Mayor, &c., of New York* (1 Seld. 434), is referred to and commented on in *Sheldon* v. *Wright* (1 Seld. 497), so fully that it seems requisite to give the substance of the former case, first, upon the present point. That was a case of proceedings under the right of eminent domain. The city took a portion of the appellant's land, upon which to build the reservoir of the Croton Water Works. The statute law is, that the commissioners should first endeavor, *bona fide*, to purchase the land by private agreement, but if the owner and commissioners cannot agree, then the vice-chancellor has jurisdiction of the matter, upon proper proceedings, to condemn the land. Either party can bring it before that officer by petition. In the above case, the mayor, &c., filed the petition, and alleged such disagreement, and the petition was sworn to by one of the commissioners. It was held that the disagreement between the owner and the commissioners, was an essential prerequisite to the jurisdiction of the vice-chancellor.

In a collateral proceeding, attacking those by which the land was condemned, the appellant sought to contradict and disprove this allegation. This is the point of present attention. It was held to be an issuable fact. Foot, J., who delivered the opinion, says: " The real question in this cause, is whether the appellant could contradict the record by proof, and thus collaterally open and review the proceedings, &c. On examining the authorities respecting the conclusiveness of records on jurisdictional questions, there will be found great and irreconcilable diversity." He then takes the proposition, that when the jurisdiction of a court of limited authority, depends upon a fact which must be ascertained by that court, and such fact appears and is stated in

the record of its proceedings, a party who had an oppor-
tunity to controvert the jurisdictional fact, but did not, and
contested upon the merits, cannot afterwards, in a collateral
action against his adversary, impeach the record, and show
the jurisdictional fact therein stated, to be untrue; and he
cites several authorities.

The case of *Sheldon* v. *Wright*, (1 Seld. 497,) was eject-
ment for land, brought by the heir, in which he attacked
the sale made by the administrator, for the payment of debts.
The second point made, related to the publication of the or-
der to show cause. This is held to be " a jurisdictional fact,
of the evidence of which the surrogate must necessarily
judge. He has judged and decided that the order was pub-
lished as required by the statute, and his judgment appears
on the record of his proceedings." The question arises how
does this appear. The record recites, in the usual manner
of record recitals, that the order had been published. The
court then proceeds: "The first inquiry is, can that judg-
ment be overhauled in this collateral action, at the instance
of the appellant?" They refer to *Dykman* v. *The Mayor*,
as deciding a similar question, but say: " An important
particular in which the present case differs from that of
*Dykman* v. *The Mayor*, is, that in the latter, Dykman ap-
peared in the summary proceedings, and litigated, while in
the former, the appellant did not appear. The question
then arises, does his omission place him in a more favorable
condition for litigating the jurisdictional fact? or, in other
words, can a party to a judicial proceeding, by lying by and
omitting to appear, acquire a right to open the proceedings
at any time, and litigate in a collateral action, a jurisdic-
tional fact? It will be perceived at once, that if the right
depends on appearance or non-appearance, the fact that the
party claiming it has been served with personal or statutory
notice, makes no difference." The court here means, it is
presumed, that it makes no difference by which method the
party has been served; for they go on and say, that if there
is any difference, it is in favor of the personal notice, for the
reason that this is, in general, more difficult to prove than

one by publication, after a lapse of time.   They proceed :
" It cannot be, therefore, that the acknowledgment or denial
of the right of a party to disregard the record, and collater-
ally litigate a jurisdictional fact, depends on his appearance
or non-appearance; but it rests upon a broader and deeper
ground—which is, that when a court or judicial officer, in
the exercise of rightful functions, adjudges upon a matter,
that judgment is final, and is conclusive on the facts which
it embraces."   The court then say, there are some qualifica-
tions of this principle, one of which is, "that if the court or
officer which pronounces the judgment, has not jurisdiction
of the subject and parties, the judgment is not conclusive,
and the difficult and important point for decision, (applying
to the case then in hand,) is whether the judgment. of the
surrogate is conclusive on the fact of the publication of the
order for persons interested to appear.   In my opinion it is.
When THOMPSON, C. J., said, in the case of *Borden* v. *Fitch*,
15 Johns. 141, that ' the want of jurisdiction is a matter that
may always be set up against a judgment;' and SPENCER,
C. J., quoted his language with approbation, in *Mills* v. *Mar-
tin*, 19 Johns. 33, and SUTHERLAND, J., repeated it in *La-
tham* v. *Egerton*, 9 Cow. 229 ; these distinguished judges
doubtless intended only to say, that the want of jurisdiction
might always be set up against a judgment, when it appeared
on the record, or was presented in any other unexceptiona-
ble manner."   " We then have a case, where a party resided
within the jurisdiction, where there is evidence on the rec-
ord, that the statutory notice was given, and the judgment
that such notice was full and perfect; and we are asked, in
a collateral action, to disregard the surrogate's judgment,
and open and investigate the jurisdictional fact of publica-
tion of the notice."

In the foregoing case, the facts which were proven, are
shown, and the court refuse to look back to them.   The
judgment was no more full, than in the case at bar.   This
case shows that the court does and must decide on its juris-
diction, in these matters.   It is true, it goes the length that
you cannot contradict the record on an appropriate matter

HARVARD LAW SCHOOL LIBRARY

found or adjudicated, but there is much other authority also to the same point. That decision is by a court of high character, and is a recent one, being made in 1851. The case of *Miller* v. *Brinkerhoff*, 4 Denio, 118, is to the doctrine, that when certain facts are to be proved to a court of special and limited jurisdiction, as a ground for issuing process, if there be a total defect of evidence as to any essential fact, the process will be declared void, in whatever form the question may arise. But when the proof has a legal tendency to make out a proper case, then, although the proof may be slight and inconclusive, the process will be valid, until it is set aside by a direct proceeding for that purpose. In the one case, the court acts without authority; in the other, it only errs in judgment, upon a question properly before it for adjudication. In one case, there is a defect of jurisdiction; in the other, only an error of judgment.

There are a few points upon which the former opinion of this court appears to have been misconceived, probably on account of its too great generality. One of these relates to the Probate Court being satisfied of its own jurisdiction. We have not held that the court may assume jurisdiction, and that this shall be conclusive, except on error. We have recognized those cases which hold, that where there is a want, a destitution, of evidence of the jurisdictional facts, the question may be raised collaterally; but when there is such evidence—for instance, where there is a petition, a notice, &c., and the only question is of its sufficiency under a construction of either the law or the paper itself—then, so far, the court must judge of its own jurisdiction, and its adjudication is good, until set aside in some regular manner.

The order of the Probate Court, is not to give " twenty-one days' notice." This is a construction, and involves one of the questions of the case, and therefore is not to be gratuitously assumed. The argument of counsel for petitioner, on rehearing, intimates that there is no proper evidence of record, or in the papers, of the advertisement of the sale. Among the proceedings of the District Court, we find, (over the hand of the judge of that court,) that " it was shown and

admitted, that the notice of sale was published," as before stated.    This is a sufficient proof of the fact, certainly, for the purposes of the court; and we would suppose we had misapprehended the objection, were it not too clear on the argument.    In this cause, we did not intend to place any part of the decision, upon the ground of the confirmation of the sale, by the Probate Court.    This idea applies to sales by guardians, of the estate of their wards, and, therefore, has place in the opinion in the case of *Cooper* v. *Sunderland*, but it does not apply to an administrator's sale.    In the preceding opinion, in this cause, and that of *Cooper* v. *Sunderland*, we speak of correcting the errors of the Probate Court, on appeal, &c.    Our language has been taken too literally.    Besides appeals, there are writs of certiorari, motions to set aside, and special motions, &c.    The language is intended to indicate any of the methods of correcting errors and proceedings, whether by appeal, writ of error certiorari, or motion, to the same court; and is used to point to any or all of these modes, as distinguished from a collateral impeachment of the proceeding.

We have thus endeavored to review this cause, with a reference to those cases which approach the nearest to the precise points made, and which have been most rigid in their construction; and are constrained to abide by the conclusion, at which we arrived in the former opinion.    But we are supported and strengthened yet more, when we refer to the cases cited in the former opinions, and principally, in *Cooper* v. *Sunderland*, from the federal courts, and especially that of *Grignon's Lessee* v. *Astor*, 2 How. 317, (15 Curtis, 125,) and those in 11 S. & R. 429; 11 Mass. 227, and the later one of *Betts* v. *Bagley*, 12 Pick. 571, 582. It is by no means clear, but that these cases establish a doctrine, going much beyond what is demanded, to sustain the proceedings in the present cause.

The former opinion of this court is sustained, and the judgment of the District Court is reversed.