## Van Horn *et al.* v. Ford *et al.*

1. PLEADINGS: CAUSE OF ACTION: DEMURRER. The petition in an action to set aside a sale of real estate, made by an administrator, under the provision of the Revised Statutes of 1843, alleged that the sale was not public, and that it was void because tainted with fraud and collusion between the administrator and the purchaser; and the probate records relating to such sale were inconsistent and contradictory, as to the manner in which it was made. *Held*, That a demurrer to the petition should have been overruled.

2. JURISDICTION OF PROBATE COURT OVER LANDS OF DECEDENT. Under § 3, p. 675, Revised Statutes of 1843, the Probate Court had jurisdiction to authorise the sale of lands lying in any county in the territory, and belonging to the decedent. The place of sale was left in the discretion of the administrator and of the judge making the order.

*Appeal from Cedar District Court.*

FRIDAY, JUNE 24.

THIS is an appeal from an order of the Court, sustaining a demurrer to the plaintiff's petition, which had been filed to set aside an administrator's sale of real estate. The case made is as follows:

1st. The petition recites that James G. Morrow died intestate, in Muscatine county, on the 6th day of June, 1845,

leaving real estate in Muscatine county, and the lands now in controversy in this suit, in Cedar county.

2d. That on petition of widow, James L. Parmer, was appointed administrator of the estate of Morrow, on the 17th day of June, 1846.

3d. That there were personal assets, more than double the amount of debts due from the said estate.

4th. That on the third day of July, 1846, and before the administrator had had sufficient time to make an effort to collect the debts due to said estate, and without attempting to collect the same, said administrator petitioned for license to sell all of the real estate of the decedent, falsely and fraudulently representing its worth to be $450; and that the personalty was insufficient to pay the debts due from the said estate; and that said representations were made, and the order of sale was procured by collusion with Lyman Fulton and John Lemp, and other creditors of the estate of said Morrow, deceased, all of which acts and doings were fraudulent.

5th. That instead of those representations being true, the truth was, that after said Parmer had ceased to act as administrator more than $2,000 was collected from the personalty belonging to said estate.

6th. That on the 25th day of July, 1846, a warrant of sale issued to Parmer from the Probate Court, which is copied in the petition. This order or warrant of sale required that said administrator should give "*twenty-one days*' notice of such sale, by printing notifications thereof in the *Bloomington Herald* for three successive weeks." That he did not give "*twenty-one days*'" notice, as required, but that the notice was published on the 31st of July, the 7th of August, the 14th of August; and the sale took place on the 15th day of August, 1846, in the town of Bloomington, thus giving but *fourteen days*' notice instead

of *twenty-one*, as required. That the sale was absolutely void, for want of notice as required.

7th. That said order could not, and did not, confer any power to sell the land in dispute; that no notice of sale was ever published in Cedar county; that the pretended sale took place in Muscatine county; that the land was never offered for sale in Cedar county; and that all of the pretended acts of the Probate Court and the administrator respecting the land in controversy in this suit, were and are, fraudulent and void.

8th. That said land never was sold at public sale, but that at the pretended sale at Bloomington, S. C. Hastings bid off the same at $227, but refused to take it; that in January, 1847, said administrator, without any authority in law or any order of court, sold the said land to Fulton and Lemp, for $210, at private sale.

9th. That subsequent to the deed from the administrator to Fulton and Lemp, said Fulton sold his undivided interest to Lemp, who sold said land to Shaw, who sold the same to Culbertson, who sold to Ford, who is now the person claiming to own the same, under said administrator's deed, and that all of said conveyances are void as against petitioners, and that petitioners have never been divested of their title in and to said land.

10th. That at the date of said sale, petitioner, Mary I., was but three years old, had no legal guardian, nor was there any guardian *ad litem* appointed for her, by the court, nor was she in any legal or proper manner made a party to the proceedings."

*D. C. Cloud* for the appellant.

*Cook & Drury* for the appellee.

LOWE, J.—The above is the plaintiff's own statement of the substance of his petition, and upon the facts therein

stated is based a prayer for relief, to the effect that the sale of the land in Cedar county be declared ineffectual and void, and the title and possession thereof decreed to the petitioners, &c. A transcript of the proceedings of the judge of probate of Muscatine county, under which the land in controversy had been sold to the defendants, is annexed to and made a part of the petition.

The demurrer sustained to this petition contains the following points:

That the same does not state facts sufficient to constitute a cause of complaint.

That it does not show that the Probate Court exceeded, but on the other hand, had jurisdiction over the property ordered to be sold.

That the irregularities of such sale, by the administrator, cannot be insisted upon collaterally in this proceeding.

That the sufficiency of notice for the sale of said property, has been adjudicated by a court having jurisdiction of the subject matter, and cannot be reviewed.

That said premises have passed into the hands of innocent third parties, and cannot be recovered by plaintiffs.

That plaintiffs' remedy is against the administrator and his sureties, and not against the defendants.

That said plaintiffs have a full remedy at law, and are not entitled to the relief prayed for, in a court of equity.

The court, in expressing its opinion upon the merits of this demurrer, considered that the judge of probate, authorizing a sale of the lands in dispute, had jurisdiction both of the parties to be affected and the subject matter, and that inasmuch as the infirmity which would, in equity, vitiate the defendant's title, did not necessarily appear, from an inspection of said proceedings, a subsequent purchaser, without actual notice, could not be affected thereby, and therefore held that the petition did not state facts, which if true, would entitle plaintiffs to the relief asked.

The proceedings of the judge of probate, under whose authority the land in question was intended to be sold, including the administrator's reports of his doings thereunder, are made a part of the petition in this case. With reference to the manner the administrator sold the tract of land in question, the proceedings aforesaid show the following facts: that the same was sold at public auction, to Fulton and Lemp, the highest bidders, for $227, according to the administrator's first report, which the record shows was duly approved by the judge of probate on the 10th day of October, 1846.

In January following, a deed of conveyance for the land in question, was made by the administrator, to Fulton and Lemp, reciting that the land had been sold at public sale, under an order of the Probate Court, and in harmony with the facts set out in the above report.

Afterwards, on the 26th of April, 1847, the administrator made a second or supplemental report, in substance to the effect, "that he had made a mistake in his first report, in this to wit, in representing said land as having been sold to Messrs. Fulton and Lemp, for the sum of $227, but that the fact was that, at the time of the sale aforesaid, S. C. Hastings bid for the same the sum of $227; but, afterwards, refused to take the same. That, subsequently, Messrs. Fulton and Lemp offered to take the said real estate, as if bid for by them at the price of $210, which offer, after due consideration, the administrator accepted, and asks that he may have a credit of $17, the difference between the two sales."

These two reports are incompatible with each other; the alleged mistake in the first is not asked to be corrected in the second, except so far as the amount or price for which the property sold is concerned.

The chief purpose of filing the second, seems to have been to obtain a credit of $17, the difference in the

amount of the purchase-money, as set forth in the two reports.

Again, whilst the two reports agree in the statement, that the property was sold to Fulton and Lemp, yet they differ as to the manner in which the sale was made, one declaring that it was public, the other private. The facts recited in the deed, correspond with those set forth in the first report.

Now, in this uncertain condition of the probate record, standing alone and unexplained, it would not be safe, or perhaps just, towards the parties interested, to undertake to pronounce upon their rights, by declaring the sale valid or invalid, or even to pass definitely upon the question whether the defendant Ford should be charged with constructive notice of any vital irregularity in the administrator's sale, by anything the probate record discloses.

It is sufficient for us at present that this doubt as to the meaning of the administrator's reports, is rendered certain by positive averment in the plaintiffs' petition, to the effect that no public sale was ever made to Fulton and Lemp, but that the same was private, and void, because effected through fraud and collusion between the administrators and the purchasers. If so, and the demurrer admits the truth of these charges (and they also derive, to say the least, some color from the probate records, made a part of the petition), the sale cannot be sustained if the land is still in the hands of the first purchasers. But whether it would also vitiate the title in the hands of subsequent *bona fide* purchasers, we prefer to reserve the expression of any opinion until we see to what extent the above allegations will be supported by the evidence. Standing confessed as they do by the demurrer, they furnish ground of complaint which, upon a hearing, might entitle the plaintiffs to relief, and therefore the demurrer should have been overruled.

In regard to the question whether the Probate Court of the county of Muscatine had jurisdiction to authorize the

sale of lands by an administrator, the same lying in Cedar county, we answer affirmatively, by holding that the same is fairly deducible from § 3, page 675 of the Revised Statutes of 1843, which reads as follows:

. "Upon the decease of any inhabitant of this territory, letters testamentary, or letters of administration on his estate, shall be granted by the judge of probate of the county in which the deceased was an inhabitant or resident at the time of his death, and when any person dies intestate in any State or county, leaving any estate to be administered within this territory, administration thereof shall be granted by the judge of probate, in any county in which there is any estate to be administered, and the administration, which shall be first lawfully granted in the last mentioned case, shall extend to all the estate of the deceased within the territory, and shall exclude the jurisdiction of the Probate Court, in every other county."

The above section settles the question as to the power of the probate judge of Muscatine county to order a sale of the real estate of the decedent, wherever situated, but conceding this, it is claimed that the administrator, nevertheless, must, in the execution of said order, advertise and sell the land in the county where situated; this is not made requisite by the statute, but the place of sale seems to have been left discretionary with the administrator, and the judge ordering the same. It is perhaps a sufficient answer to this objection to say, that it is not among the causes for which the validity of an administrator's sale can be contested, as specified in § 36, page 713 of the Revised Statutes of 1843. As to the other points of objection to the administrator's sale, they were settled in the case of *Morrow* v. *Weed*, 4 Iowa, 77, against the plaintiffs, and we have no reason for changing such ruling. Still, for other causes herein above stated, we believe the Court erred in sustaining the demurrer, and must therefore reverse the order.     Reversed.